410 So.2d 1048 (1982)
Larry KRAAZ and Joyce Kraaz
v.
LA QUINTA MOTOR INNS, INC.
No. 81-C-0937.
Supreme Court of Louisiana.
March 1, 1982.
*1049 William H. Howard, III, and Jesse R. Adams, Jr., of Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant-applicant.
George P. Vedros, & Ralph L. Barnett, of Barnett & Vedros, Gretna, for plaintiff-respondent.
WATSON, Justice.
The primary issue is the delictual liability of an innkeeper for an employee's negligence which is a substantial factor in the armed robbery of a guest. A secondary issue is the quantum of damages awarded plaintiffs.
Plaintiffs, Larry and Joyce Kraaz, are in an itinerant business: buying, selling, racing *1050 and betting on horses. Their only permanent home is the residence of his parents in Chicago.
On December 31, 1978, Mr. and Mrs. Kraaz were attending the race meeting at the Fair Grounds and were staying at the La Quinta Motor Inn in Metairie, Louisiana. At approximately 4:00 A.M. the seventeen year old desk clerk, David Ulmer, was approached by two men. One of them identified himself as Benson in 233, who had lost his key. Since there was a Benson registered in 233 and no room key available, Ulmer gave the man a pass key to all the rooms in the motel. This was contrary to company policy. Subsequently, Ulmer became apprehensive, discovered that Benson knew nothing about the key request, and observed two men coming from the direction of the Kraaz's room, one of them with a gun in his waistband.
In the interim, the two men had unlocked the door of the room occupied by Mr. and Mrs. Kraaz and broken the chain. They hog-tied Larry Kraaz, physically abused Joyce Kraaz, and took a package containing about $23,000 from Mrs. Kraaz's purse. They also took a .25 caliber Smith & Wesson automatic but overlooked another $15,000 in cash which was lying near the gun. The thieves also failed to find an additional $3,000 in the purse. The money was intended for the purchase of race horses. The testimony was that these are generally cash transactions.
Thomas Tomillo, a horse trainer, testified that he was training two horses for Kraaz in December of 1978 and working with him on the purchase of additional horses. Mrs. Kraaz gave him between $1,000 and $1,500 that day from the package which was stolen that night. It originally contained $25,000.
Larry Kraaz said he was knocked out of bed and pinned down on the floor by two men with a gun. His wife started screaming and got hit in the face. Kraaz feared he would be killed and his wife raped and killed. He heard the hammer clicking on a large caliber weapon being held against his head. After he was tied with wire and his mouth taped, they mauled his wife and put her in the bathtub. Then they came out of the bathroom, picked up her purse, emptied it out, grabbed the bundle of cash and ran. Kraaz broke the wire, threw his pants on and reached for his pistol, but it was gone. He got a .44 magnum from his car and tried unsuccessfully to intercept the thieves at the back door of the motel. While chasing through the motel with his gun, Kraaz observed the elderly security guard sound asleep on the steps behind the office. Since the crime, Joyce Kraaz has become paranoid about motels and Larry has lost her companionship. She had previously travelled around the country with him ten months of the year. Now Joyce Kraaz feels more secure in Chicago, where there are other people and a dog in the house. After the accident, he described her as "a complete basket case".
One of the two assailants wore a mask. Joyce Kraaz was convinced that she and her husband would be killed, because she could identify the man without the mask. Her mouth, leg and hip were bruised and swollen. She remained in the room until her husband took her to the hospital that afternoon about 5:00 P.M. She could not walk and thought her hip might be broken. The emergency room doctor told her that the swelling was just a very bad bruise and would go away in time. She has been too frightened and uncomfortable to resume her former life and now takes sleeping pills and tranquilizers regularly. She has lost weight and has no appetite. Because she needs help, she intends to undergo therapy with a Chicago psychiatrist.
Dr. Terry E. Passman, a board certified psychiatrist, saw Joyce Kraaz shortly after the robbery on January 3, 1979. He described her as extremely frightened, apprehensive, and essentially unable to function. He gave her some medication to calm her down enough to converse. Dr. Passman diagnosed an acute traumatic neurosis. Despite her total incapacity, he decided hospitalization might aggravate the anxiety. Sodium Amytal, an extremely strong sleeping drug, was administered intravenously at a hospital emergency room to help her over *1051 the initial period of shock. According to Dr. Passman, Joyce Kraaz had experienced several traumatic incidents as an adolescent, which she had repressed.[1] The experience at the La Quinta broke down this defense mechanism and caused an exaggerated reaction to the situation. In Dr. Passman's opinion, Mrs. Kraaz could have lived a normal life except for this incident.
Dr. Passman saw Joyce Kraaz again on January 17 when she was still extremely upset, crying and fearful, with a feeling of impending doom. Another tranquilizer was prescribed. On January 22, she was less anxious, but still had problems at night. The incident had created a fear of rape which had adversely affected her sex life with her husband, previously a strong point in the marriage.
Dr. Passman next saw Joyce Kraaz on January 29. She had improved, but still had early morning awakening, a symptom of depression, fear and guilt. She was still extremely anxious and her sex life unsatisfactory. When she next came to New Orleans, Dr. Passman could not fit her into his schedule. Dr. Passman advised Joyce Kraaz to continue psychotherapy.
Mr. Kraaz became convinced that the sessions with Dr. Passman were doing his wife more harm than good because she was so upset afterward. His solution was to let time take care of the problem, but this did not work. She went back to Dr. Passman. On March 18, 1980, Dr. Passman described Joyce as haggard and tense. Her marriage and sex life have been significantly impaired by the crime. On March 20, Larry Kraaz told Dr. Passman their sex life is terrible and the marriage is deteriorating. Dr. Passman discussed the need for future treatment with both Mr. and Mrs. Kraaz and recommended therapy at least twice a week for two years, possibly longer. He referred them to several psychiatrists in Chicago. According to Dr. Passman, his current fee is $65 a session and this is comparable to Chicago fees.
Detective Alfred Cantrell of the Jefferson Parish Sheriff's Department participated in the investigation. He confirmed that a key had been used to open the door, the chain lock was broken, and a large roll of cash remained on the night stand. The detective did not count the roll which Larry Kraaz said contained $15,000. Gary Croutcher, the manager of the motel, told Cantrell they had been having security problems.
An earlier incident at the motel involved W. L. Quattlebaum, Jr., an insurance company employee, who also owns, buys and sells race horses. Someone knocked on his door the night before the Kraaz robbery and identified himself as the manager. Quattlebaum cracked the door and saw a man wearing a ski mask and gloves. He managed to push the door closed and reported the attempted robbery to the motel office. Although the desk clerk said he would take care of calling the police, the police never came.
A notice allegedly posted on the door of the Kraaz room quotes some "Louisiana Hotel Laws" in very small print. The entire notice measures approximately three inches by seven inches. The last two items are LSA-C.C. arts. 2968 and 2971.[2] C.C. art. 2968 reads as follows:
"Every landlord or keeper of a public inn or hotel, shall be required to provide with an iron chest or other safe deposit for valuable articles belonging to his guests or customers, and each landlord or hotel *1052 keeper shall keep posted upon his doors and other public places in his house of entertainment, written or printed notices to his guests and customers that they must leave their valuables with the landlord, his agent or clerk, for safe keeping, that he may make safe deposit of the same in the place provided for that purpose."
When such a safe is provided and a notice to that effect is "conspicuously posted", liability is limited to $100. LSA-C.C. art. 2971. Significantly, Civil Code article 2969[3] exempts from this limitation losses which "occur through the fraud and negligence of the landlord, or some clerk or servant provided by him in such inn or hotel." Laubie v. Sonesta Intern. Hotel Corp., 398 So.2d 1374 (La., 1981) held that the limitation of liability in LSA-C.C. art. 2971 only applies to the innkeepers' contractual liability as a depositary. The innkeeper remains liable for damages resulting from fault on the part of him or his employees.
Neither the investigating officers nor the Kraazs saw the notice allegedly posted in the room. Joyce and Larry Kraaz both said they didn't know the La Quinta had a safe.
Gary Croutcher, the manager at La Quinta, testified that he checked the Kraaz room for damage between 9:00 and 10:00 A.M. the day after the accident and observed a notice posted behind the door. Joyce Kraaz testified in rebuttal that Croutcher did not appear in her room that morning. According to Croutcher, the housekeeper is instructed to automatically replace any missing notices. The La Quinta has six safes. Croutcher admitted that he had not pointed out the notice to Mr. and Mrs. Kraaz or anyone else at the time of the crime and had not been asked about it until three or four weeks before trial. There is no sign at the registration desk advising that there is a safe for valuables. Croutcher's testimony was contrary to that of Detective Alfred Cantrell and other witnesses in many particulars.
The trial court concluded that La Quinta's employee was grossly negligent in providing a pass key to criminals and the motel was liable for the Kraazs' damages. Mrs. Kraaz was awarded $3,500 for physical injuries, $30,000 for traumatic neurosis, and future medical expenses of $13,000. Mr. Kraaz was awarded $2,500 for his physical and mental pain and suffering and $23,000 for the lost cash. The trial court was not satisfied that there was a notice posted on the motel door, but stated that, even if present, it was not sufficient to alert the Kraazs to the fact that a depositary was available for the protection of their valuables. The Court of Appeal affirmed. Kraaz v. La Quinta, 396 So.2d 455 (La.App. 4 Cir. 1981). A writ was granted to review the judgment. 401 So.2d 992 (La., 1981).
Defendant relies heavily on LSA-C.C. art. 2970 which provides:
"He [the innkeeper] is not responsible for what is stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence."
The Court of Appeal held that Civil Code art. 2970 was not applicable because, even though the chain on the door was broken, the initial entry to the room was made with a pass key. Laubie also involved a forcible entry; a chain lock was severed. Laubie states that LSA-C.C. art. 2970, like LSA-C.C. art. 2971, relates only to the innkeeper's contractual obligations as a depositary. 398 So.2d 1377. If a forcible armed entry were unaccompanied by fault on the part of *1053 the innkeeper or his employees, there would be no liability. However, that is not the case. The elderly security guard was asleep. The seventeen year old boy on duty gave a pass key to the entire motel to two strangers. There was unquestionably negligence. Since the pass key was a key element in the robbery, Civil Code article 2970 does not exonerate the innkeeper from liability.
Defendant also relies upon Robbins v. Pontchartrain Apartment, 175 La. 278, 143 So. 263 (1932). In Robbins, the trial court's determination that the landlord's clerk was negligent was reversed. Leaving the safe unlocked at 3:00 A.M. was held to be "not negligence". 143 So. 265. That somewhat dubious conclusion distinguishes the matter from this one.
An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. LSA-C.C. art. 2970, supra. The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Wilson v. Iberville Amusement Co., 181 So. 817 (Orl.App.Ct.1938). Thus, a guest is entitled to a high degree of care and protection. See Galland v. New Orleans Public Service Inc., 377 So.2d 84 (La., 1979), and Green v. TACA, 304 So.2d 357 (La., 1974). The innkeeper has a duty to take reasonable precautions against criminals. Safeguarding the room keys is a minimum requirement. The duty to avoid handing a pass key to any stranger is even stronger. Breach of this duty was a direct cause of plaintiffs' physical, emotional and financial damages. La Quinta's employee, Ulmer, was at fault in giving the two armed robbers a pass key. The employer is liable for the resulting damages. LSA-C.C. arts. 2315; 2320.
The attitude of La Quinta's management toward the safety of its guests is emphasized by Quattlebaum's testimony about the lack of interest in the attempted robbery of his room. See Nordmann v. National Hotel Co., 425 F.2d 1103 (5 Cir. 1970). In Quattlebaum's case, the thief's lack of a key enabled him to avoid being robbed.
Contributory negligence of the Kraazs in having the money with them is urged as a defense. Mere possession of money does not constitute negligence. The trial court was unconvinced that a notice about safe keeping was posted in the room. The trier of fact was well justified in disregarding Croutcher's testimony to the contrary. Even if posted and adequate, the notice was certainly not conspicuous. The Kraazs could not foresee that assailants would open their room door with a pass key in the middle of the night, leaving them no time to defend themselves or call for help. They were not negligent.
There is no abuse of discretion in the award of damages. LSA-C.C. art. 1934. The facts more than amply support the amounts awarded.
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
AFFIRMED.
BLANCHE, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by BLANCHE, J.
BLANCHE, Justice (dissenting).
Plaintiff, a horse-racing man who makes his living betting horses, called his wife in Chicago to bring him $25,000 out of the refrigerator where they kept their life savings. After a day at the Fairgrounds flashing their bank roll around, plaintiffs went out to dinner and then retired to their room in the LaQuinta Inn.[1] In their possession at that time was $41,000 in cash. Although plaintiffs have a permanent home in the *1054 residence of their parents in Chicago, they are usually on the road, as the majority notes, travelling around the country about ten months of the year. Thus, staying in motels should not be an unfamiliar surrounding, nor should hotel and motel rules concerning the deposit of valuables be unknown, especially to racing enthusiasts who carry such big bank rolls.
With regard to whether or not the notice was posted, I believe the notice required by C.C. art. 2968, that a safe was available, was posted. The only positive testimony on this issue came from the manager of the hotel, who stated that it was hotel policy for the maids to check for the notice each day as part of the cleaning routine and to replace it if it were missing. Additionally, he said he checked for the notice the day after the incident and it was posted on the door at that time. The testimony of the two detectives who came to the room in connection with the criminal investigation was of little assistance due to the fact that they said they did not recall seeing the notice, but added that they were not looking for it, because they were only interested in gathering evidence for the criminal investigation and had no interest in potential civil liability. Mr. Kraaz' testimony was to the effect that he did not believe the notice was posted, but did not really remember. Because of the indefinite nature of the testimony of the officers and Mr. Kraaz, I find the hotel manager's testimony persuasive.
With regard to the law, whose plain, unambiguous provisions were disregarded, the liability of an innkeeper for valuables is governed by C.C. arts. 2968, 2969 and 2971. The majority opinion relies on this Court's interpretation of these Codal provisions in Laubie v. Royal Sonesta International Hotel Corp., 398 So.2d 1374 (La.1981). That decision held that the above mentioned Civil Code articles only limited an innkeeper's liability as a depositary, but did not restrict his delictual liability. Laubie overruled a long line of prior jurisprudence which held that the articles limited an innkeeper's liability on either basis and, to the extent the majority relies on that case, I am unable to agree. An interpretation that these articles limit an innkeeper's liability only as a depositary renders C.C. art. 2971 useless. The innkeeper would only have occasion to rely upon the limitation of liability found in C.C. art. 2971 if the loss occurred through fraud or negligence, because without fraud or negligence, he is not liable at all. See C.C. art. 2969. The requirements found in C.C. art. 2968 are that an innkeeper (1) shall provide an iron chest or other safe deposit for valuable articles belonging to his guests or customers and (2) post notices of the availability of the safe. If the innkeeper complies with these two requirements, C.C. art. 2969 provides that he shall not be liable for any valuables unless the loss occurs through the fraud or negligence of the landlord, or some clerk or servant employed by him. At this point, it would appear that the innkeeper might be liable if the loss of the valuables occurs because of negligence on his part; however, C.C. arts. 2968 and 2969 should not be viewed in isolation and must be read in pari materia with C.C. art. 2971, which provides that no innkeeper shall be liable under the provisions of C.C. arts. 2965-2970 to any guest in any sum exceeding one hundred dollars unless a greater liability has been contracted for in writing if the innkeeper has posted the notice required in C.C. art. 2971. When the applicable articles are interpreted together, the result clearly limits the liability of an innkeeper to one hundred dollars, even if his negligence has been a factor in the loss and this restriction should be recognized to constrain his liability both as a depositary and under a delictual theory. Negligence is specifically mentioned in C.C. art. 2969, and the innkeeper's liability for it is clearly limited in C.C. art. 2971; the intent to allow the innkeeper a measure of protection should not be circumvented by an interpretation that would protect him as a depositary but leave him totally vulnerable under a delictual theory.
Considering the nature of the hotel business, the fact that the rooms are available to public access, and the number of people who are in and out of hotel rooms on a day to day basis (hotel guests, visitors, hotel *1055 employees and others), there is always the potential for burglary. Realistically, in almost any instance of burglary, it is arguable that the hotel was negligent in some way. If the rule is established that innkeepers are liable for valuables, including large sums of money, where some degree of negligence can be established on the part of the hotel or one of its employees, the burden placed on the innkeepers of this state will be unduly inequitable and onerous. It is patently unfair to provide no limit on the amount a guest may claim, even if the innkeeper is negligent in some respect, when the innkeeper provides a safe deposit and notice that it is available and the guest instead chooses to undertake the safekeeping of his valuables himself.
For the reasons stated above, I am unable to agree with the majority opinion; therefore, I respectfully dissent.
NOTES
[1] At age thirteen, Joyce Kraaz saw her mother's jaw broken by her stepfather. The stepfather had made frightening sexual advances toward her.
[2] LSA-C.C. art. 2971 provides:

"No landlord or innkeeper shall be liable under the provisions of the foregoing six articles to any guests or party of guests occupying the same apartments for any loss sustained by such guests or party of guests by theft or otherwise, in any sum exceeding one hundred dollars, unless by special agreement in writing with the proprietor, manager or lessee of the hotel or inn a greater liability has been contracted for.
"Provided that no guest shall be held bound by the limitation of value established in this Article unless this Article is conspicuously posted in the guest room."
[3] LSA-C.C. art. 2969 provides:

"Every landlord, hotel or inn keeper who shall comply with the requirements of the preceding articles [article], shall not be liable for any money, jewelry, watches, plate, or other things made of gold or silver, or of rare and precious stones, or for other valuable articles of such description as may be contained in small compass, which may be abstracted or lost from any such public inn or hotel, if the same shall not be left with the landlord, his clerk or agent, for deposit, unless such loss shall occur through the fraud or negligence of the landlord, or some clerk or servant employed by him in such inn or hotel; provided, however, that the provisions of this article shall not apply to a wearing watch, or such other articles of jewelry as are ordinarily worn about the person."
[1] A suspect had been arrested in the criminal investigation at the time this case came to trial. In this civil suit, a detective assigned to the case testified that the suspect said he was familiar with Mr. and Mrs. Kraaz from the racetrack and knew that they usually carried twenty-five to one hundred thousand dollars in cash with them. Although hearsay, and not relevant in the case presently before this Court, it certainly indicates that Mr. and Mrs. Kraaz made little effort to conceal or protect the large sums of money they frequently carried.