602 So.2d 1070 (1992)
Adaina Kathleen POTTER
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF SCOTLANDVILLE, et al.
No. CA 91 0659.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Rehearing Denied August 10, 1992.
*1071 William D. Grimley, Baton Rouge, for plaintiff-appellant Adaina Kathleen Potter.
Thomas M. Richard, Metarie, for defendants-appellees, First Federal Savs. & Loan Assoc. of Scotlandville, Kim Knighten and Associates, and State Farm General Ins.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This action is a suit for damages alleging that the plaintiff was the lessee of an apartment in an apartment complex, and she was attacked in the apartment complex parking lot and subsequently raped and robbed. Made defendants were the First Federal Savings & Loan Association of Scotlandville (First Federal), the owner of the property and plaintiff's lessor, Kim Knighten, the manager of the apartment complex, and State Farm General Insurance Company (State Farm), the alleged insurer of First Federal and Knighten. The defendants filed a motion for summary judgment asserting that under the undisputed facts of the case they owed no duty to the plaintiff to protect her from the intentional criminal act of a third person, citing La.C.C. art. 2703 and the jurisprudence interpreting it. The trial court granted the summary judgment and dismissed the plaintiff's petition with prejudice, citing Smith v. Howard, 489 So.2d 1037 (La.App. 1st Cir.1986). The plaintiff took this devolutive appeal.

UNDISPUTED FACTS[1]
We will assume the following facts asserted by the plaintiff in her appellate brief are correct for purposes of ruling on the merits of the summary judgment:
During August of 1988, Plaintiff became a tenant at the Turtle Creek Apartments located on GSRI in Baton Rouge, Louisiana by sharing apartment number 4 in building 8238 of the complex with her roommate Karen Seibert. Together they shared the rent and utility cost [sic] evenly. (Affidavit, Karen Ann Seibert, Record pages 128-130).
On February 8, 1989, at approximately 9:30 p.m., Adaina left her apartment and walked toward her car parked in the front parking lot of the complex (Depo., Potter, taken February 9, 1990, Record, pg 21) As she reached her car, a black male came up to her with a gun in his hand and forced his way into her car with her (Depo., Potter, taken February 9, 1990, Record, pg 22). She was subsequently raped and robbed.
Prior to this time, Turtle Creek Apartments had experienced several instances of burglary and vandalism (Affidavits of Seibert and Erin Elizabeth Spaht, Record pages 131-133). The rear two units of the complex (containing eight apartments) had been badly vandalized (Depo., Knighten, taken October 5, 1989, Record, pg 66). The apartment manager, Kim Knighten, was fully aware of the criminal activity that was taking place at Turtle Creek before the rape in question *1072 (Depo., Knighten, taken October 5, 1989, Record, pgs 37, 40, 43, 45, 83, 86).
The lighting in general around the complex was poor. The tenants complained to Knighten, or to her assistant manager James Coussins, concerning the poor lighting, particularly in the parking areas (Affidavits of Seibert and Spaht). Knighten acknowledges that she received these complaints (Depo., Knighten, taken October 5, 1989, Record, pg 46). The parking area was always dark. In fact it was so poorly lit that it was impossible to determine who someone was twenty feet away (Affidavits of Seibert and Spaht).
Additionally, the Turtle Creek Apartments are located in an area of Baton Rouge with an exceedingly high crime rate. Despite this fact, Knighten made no particular effort to keep up with the crime in the area of the apartments she managed (Depo., Knighten, taken October 5, 1989, Record, pg 53).

FIRST FEDERAL'S DUTY TO THE PLAINTIFF

(Assignments of error 1 and 2)
The plaintiff assigns the following errors in the trial court ruling:
1. The trial Court was in error in finding that no legal duty exists on the part of the owner and manager of the apartment complex to protect persons such as Appellant and thus a genuine issue of law exists:
2. The trial Court was in error in finding that no legal duty exists on the part of the owner and manager of the apartment complex to protect persons such as Appellant given the level of crime in the area of this rape and the apartment complex itself and thus a genuine issue of law exists:
The legal relationship between the plaintiff and First Federal was one of lessor-lessee. A lease is a nominate contract. La.C.C. art. 1914. As a nominate contract, it is subject to the general rules governing conventional obligations or contracts found in Title IV, Book 3 of the Civil Code (La.C.C. arts. 1906-2057). See La. C.C. art. 1915. However, as a nominate contract of lease, it is also subject to the special rules specifically pertaining to leases provided for in La.C.C. art. 2668 et seq. when those rules modify, complement, or depart from the general rules of Title IV. La.C.C. art. 1916. Leases are not subject to the rules governing quasi contracts, offenses and quasi offenses found in Title V of Book 3 of the Civil Code (La.C.C. arts. 2292-2324.2). Thus, the legal rights and obligations of the parties herein are controlled by La.C.C. art. 2668 et seq. pertaining to contracts of lease, rather than La. C.C. art. 2315 et seq. pertaining to offenses and quasi offenses. Albritton v. J.C. Penney Company, Inc., 385 So.2d 549 (La.App. 3rd Cir.), writ denied, 393 So.2d 727 (La.1980).
The obligations and rights of a lessor under the Louisiana Civil Code are provided for in La.C.C. arts. 2692-2709. Pertinent to the instant case are Articles 2692, 2695, 2699 and 2703.[2] Pursuant to La.C.C. art. 13, these code articles must be interpreted in reference to each other (in pari materia). Pursuant to La.C.C. art. 2703, a lessor (such as First Federal) is not liable to a lessee (such as the plaintiff) for torts committed by third persons against the lessee. Reynolds v. Egan, 123 La. 294, 48 So. 940 (1908); Cornelius v. Housing Authority of New Orleans, 539 So.2d 1250 (La.App. 4th Cir.), writ denied, 544 So.2d 404 (La.1989); Foxworth v. Housing Authority of Jefferson Parish, 590 So.2d 1347 (La.App. 5th Cir.1991), writ not considered, 592 So.2d 1328 (La.1992); Reilly v. Fairway View II Associates Limited Partnership, 544 So.2d 73 (La.App. 1st Cir. *1073 1989); Robicheaux v. Roy, 352 So.2d 766 (La.App. 3rd Cir.1977), writ denied, 354 So.2d 207 (La.1978). As observed by this court in Reilly, 544 So.2d at 74, "[T]he only case of liability imposed on a lessor for an intentional tort by a third person on the lessee has been where the lessor specifically contracted to provide security." (Emphasis added). See, for example, United States Fidelity and Guaranty Insurance Company v. Burns International Security Services, Inc., 468 So.2d 662 (La. App. 4th Cir.), writ denied, 470 So.2d 882 (La.1985); Thompson v. Cane Gardens Apartments, 442 So.2d 1296 (La.App. 3rd Cir.1983); Carline v. Lewis, 400 So.2d 1167 (La.App. 1st Cir.1981). It is not asserted in this case that the plaintiff contracted with First Federal to provide security. In this factual posture, the general duty for preventing crime lies with law enforcement agencies such as the sheriff, state police or municipal police. Persilver v. Louisiana Department of Transportation, 592 So.2d 1344 (La.App. 1st Cir.1991). La.C.C. art. 2703 applies to torts committed by third persons on the premises leased to the lessee and to the premises owned by the lessor to which the lessee has access. Keenan v. Flanigan, 157 La. 749, 103 So. 30 (1925) (loud and disorderly tenant in adjoining apartment); Reynolds v. Egan, 48 So. at 948 (extensive excavation on adjoining property); Cornelius, 539 So.2d at 1250 (child murdered in a stairway in a nearby building); Smith v. Howard, 489 So.2d 1037 (La.App. 1st Cir.1986) (plaintiff's decedent shot in front of the defendant's apartment); Gant v. Flint-Goodridge Hospital of Dillard University, 359 So.2d 279 (La. App. 4th Cir.), writ not considered, 362 So.2d 581, reconsideration denied, 362 So.2d 1117 (La.1978) (tenant raped in common area laundry); Comment, Disturbance of the Lessee's Possession in Louisiana, 29 La.L.Rev. 101, 113-114 (1968). CONTRA: Day v. Castilow, 407 So.2d 510 (La.App. 4th Cir.1981).
The trial court judgment is correct as a matter of law.[3]
*1074 Plaintiff asserts Kraaz v. La Quinta Motor Inns, Inc., 410 So.2d 1048 (La. 1982) supports his argument about the duty owed by First Federal. See also Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La.App. 4th Cir.1984). Initially, we note that Kraaz did not consider La.C.C. art. 2703. Landry considered Kraaz and Article 2703 and observed that "[T]his should be clear when it is recalled that under Louisiana law, an owner-lessor owes no legal duty to his lessee to protect him from the tortious acts of third persons who claim no right to the leased premises. La.C.C. art. 2703." Landry, 446 So.2d at 1250. The court in Landry then reversed the judgment against an owner-lessor. Finally, Kraaz has been legislatively overruled by Acts 1982, No. 382 which amended and reenacted La.C.C. art. 2971. Laubie v. Sonesta International Hotel Corporation, 752 F.2d 165 (5th Cir.1985); Note, Liability of Innkeepers, Judicial Amendment of Statutes, and Theory-of-the-case Pleading: Kraaz v. La Quinta Motor Inns, Inc., 43 La.L.Rev. 1573 (1983).
The plaintiff asserts that the defendants "had a duty to take affirmative steps to prevent what was clearly foreseeable criminal conduct". The plaintiffs observe that an innkeeper has a duty "to take affirmative steps to guard guests against the actions of third persons, when those actions are reasonably foreseeable", citing Banks v. Hyatt Corporation, 722 F.2d 214 (5th Cir.1984). In Banks, a guest of the Hyatt Hotel in New Orleans was shot and killed by a third person on the sidewalk only four feet from the entrance to the hotel. The court cited Kraaz and stated that "innkeepers owe a high degree of care, which embraces a duty to take reasonable precautions against criminal assaults on guests." The court did not consider La.C.C. art. 2703 and the jurisprudence interpreting it.
An innkeeper for purposes of the Louisiana Civil Code is defined in La.C.C. art. 3232, that provides as follows:
Those are called innkeepers, who keep a tavern or hotel, and make a business of lodging travelers.

(Emphasis added)
A traveler for purposes of determining who is an innkeeper is defined in La.C.C. art. 3235 that provides as follows:
The term travelers applies to strangers and such as being transiently in a place where they have no domicile, take their board and lodging at an inn.
The facts herein show that the plaintiff commenced leasing her apartment in August of 1988, and she was still living there when she was attacked on February 8, 1989, six months later. The plaintiff was not a stranger transiently in the apartment where she had no domicile, and, thus, was not a traveler for purposes of Article 3235. Since the plaintiff was not a traveler for purposes of Article 3235, First Federal is not an innkeeper for purposes of Article 3232.[4] As previously indicated, the legal relationship between the plaintiff and First Federal is that of lessor-lessee (sometimes referred to as landlord-tenant) and is controlled by La.C.C. art. 2668 et seq.
Finally, it should be noted that an innkeeper and a traveler are a lessor and lessee respectively, in a lease contract. The innkeeper-traveler distinction is relevant only for purposes of a lessor's liability to a lessee when the lessor acts as a depository for the lessee's effects, La.C.C. arts. 2965-2971,[5] and for purposes of the *1075 innkeeper's privilege for supplies of provisions, La.C.C. arts. 3191, 3211, 3233-3234, 3236 and 3264. In all other respects, La.C.C. art. 2668 et seq. is controlling.
Finally, the plaintiffs assert the following:
As owner and manager of Turtle Creek, the Defendants had the legal guard of these apartments. The fact that the lights burned out created an unreasonable risk of harm. Consequently, the Defendants are strictly liable to the damages sustained.
Whether or not the parking lot was properly lighted is not controlling as a matter of law. In Brent v. Williams, 524 So.2d 158, 159 (La.App. 4th Cir.1988), the Fourth Circuit observed as follows:
Plaintiff argues that the room constituted a defect in the premises because it was dark and it was accessible from the washateria area. The mere existence of a dark room, accessible from an area open to the public does not constitute a defect exposing an owner to strict liability under La.C.C. art. 2322. Further, the room was not a legal cause of plaintiff's harm; the existence and accessibility of the room did not cause Herbert to rape plaintiff.
The case of Crochet v. Hospital Service District No. 1 of Terrebonne Parish, 476 So.2d 516 (La.App. 1st Cir.), writ denied, 478 So.2d 1235 (La.1985) is factually analogous to the instant case on this issue. In Crochet, Linda C. Derouen entered the parking lot of the Terrebonne General Hospital where she was kidnapped and later killed by her abductor. Her survivors brought a tort action against several defendants, one of whom was the designer of the parking lot lighting system. The designer filed a motion for summary judgment which was granted by the trial court. This court affirmed with the following rationale: In the case sub judice, Don Chesson & Associates, Inc. was neither a store owner nor a store manager, but designed a lighting system for the owner. The above cited jurisprudence clearly demonstrates that store owners and managers are not liable for unforeseeable and unanticipated criminal acts of independent third parties. Therefore, it would be illogical to hold a contractor of an owner liable for such unanticipated criminal acts.

Applying the duty-risk analysis to the instant case, we conclude that the risk of injury from violent acts of a third person did not fall within the duty of the defendant to design a lighting system for a parking lot. Although it is foreseeable that a person could suffer harm in the manner set forth by plaintiff, foreseeability is not the only criterion to be considered. Whether or not the risk falls within the scope of the duty owed must be determined on a case by case basis with each court weighing the policy factors it considers important.... The plaintiff's damages were sustained in a manner not easily associated with the traditional risks of poorly designed lighting systems....
In this case, the policy considerations are weighed in favor of the affirmance of the trial court. We have reviewed the record and the relevant theories of recovery available to plaintiff. We find that the risk incurred is not encompassed within the duty owed by defendant Don Chesson & Associates, Inc. to plaintiff. Plaintiff was the victim of a criminal act. Her damages could have been just as easily sustained had the lighting system *1076 been of the very best design and construction. Therefore, we find that reasonable minds must inevitably conclude that as a matter of law Don Chesson & Associates, Inc. is not liable to plaintiff in this instance.

(Emphasis added; citations omitted)

Crochet, 476 So.2d at 518.
These assignments of error are without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Plaintiff is cast for the cost of this appeal. La.C.C.P. art. 5188.
AFFIRMED.
SHORTESS, J., dissents and will assign reasons.
SHORTESS, Judge, dissenting.
I disagree with the majority opinion affirming this summary judgment because genuine issues of material fact remain regarding defendants' alleged negligence.
Here, the attack clearly occurred in a common area and not within the leased premises. The trial court should not have applied Civil Code article 2703. See Day v. Castilow, 407 So.2d 510 (La.App. 4th Cir. 1981), where the fourth circuit, relying on Civil Code article 2315, held summary judgment was inappropriate where an intruder gained access to a side patio of the apartments through an unlockable gate door, an alleged defect in the common area.
In Louisiana Landlord and Tenant Law, issue 4 (1992), Professor George Armstrong, a noted commentator, after observing that liability for the acts of intruders may be based on contractual considerations, stated that the landlord's own negligence may also be the basis for harm caused by intruders.
The landlord's negligence may also be the basis of liability for harm caused by intruders. The landlord is obligated to secure apartments which have been vacated so that they do not provide a hiding place for intruders. If locks are broken or windows missing on neighboring units, he has a duty to repair them. In addition, any aspect of the common areas of the building which might facilitate intrusion should be repaired. Finally, the landlord may be obligated to inform tenants of prior assaults on the premises, particularly if the conditions which permitted the assault persist.
George Armstrong, Louisiana Landlord and Tenant Law, at 181-0 through 181-1 (1992). (Citations omitted.)[1]
I cannot say, as a matter of law, the lessor did not, under the circumstances, owe plaintiff a duty to warn her of past criminal activity on the premises and to keep the parking lots well lit because of that activity. Knighten's deposition clearly reveals she was constantly bombarded with complaints from the tenants over the poor lighting in the parking lots. Summary judgment was not appropriate under these circumstances.
Accordingly, I respectfully dissent.
NOTES
[1] The general law applicable to motions for summary judgment is set forth in La.C.C.P. arts. 966 and 967 and Robertson v. Our Lady of the Lake Regional Medical Center, 574 So.2d 381 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991).
[2] La.C.C. art. 2703 provides as follows:

The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance.
The general tort duty owed by the owner of immovable property to third persons is set forth in Uhrbach v. Lin, 601 So.2d 755 (La.App. 1st Cir.1992).
[3] The plaintiff could not prevail herein even if this were a tort case under La.C.C. art. 2315. Generally, there is no tort duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Fontenot v. Bolfa, 549 So.2d 924 (La.App. 3rd Cir.1989). An excellent summary of the pertinent tort law is set forth in Toups v. Hawkins, 518 So.2d 1077, 1081-1082 (La.App. 5th Cir.1987) as follows:

A business proprietor owes to his patrons the duty to provide a reasonably safe place. Although he is not the insurer of his patrons or guests, the proprietor owes them a duty to exercise reasonable care to protect them in both their person and their property.... This general duty to protect extends to harm from insult, annoyance, and danger.... Duty itself is a question of law, ... and the proprietor's general duty toward his patrons has been construed to encompass a number of more specific obligations. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest.... He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon.... Beyond these measures, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party.... Reasonable care in the context of the threat of harm presented by the enumerated parties has been interpreted, in turn, to embrace certain subduties. First, should a disturbance or a likely disturbance manifest itself, the proprietor, if time allows, must attempt to prevent injury to his patrons by calling the police.... Second, should the business owner or manager become aware of impending or possibly impending danger, he must warn his patrons of the potential danger.... As to criminal acts performed by third parties specifically, there is generally, no duty to protect others from the criminal acts of those parties.... That is, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties.... Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked, triggering the subduties discussed above.... Finally, notwithstanding the general absence of any duty to protect against third-party criminal acts, an obligation to protect, once voluntarily assumed by the business owner or manager, must be performed with due care.... Specifically, "A business which undertakes to hire a security guard to protect itself and its patrons is liable for physical harm which occurs because of negligence on the part of that guard."... Whether violence that results from the breach of an assumed duty of protection was reasonably foreseeable and is a cause-in-fact of an injury is a factual inquiry. (Emphasis added; citations omitted; italics in original)
See also Henderson v. Louisiana Downs, Inc., 566 So.2d 1059 (La.App.2d Cir.), writ denied, 569 So.2d 984 (La.1990); Sutter v. Audubon Park Commission, 533 So.2d 1226 (La.App. 4th Cir.1988), writ denied, 538 So.2d 597 (La.1989); Foster v. Colonel Sanders Kentucky Fried Chicken, Inc., 526 So.2d 252 (La.App. 2nd Cir.), writ denied, 531 So.2d 483 (La.1988). The facts herein do not show that the defendants knew or should have known, of the rapist's intended conduct.
[4] For cases interpreting innkeeper and traveler, see Succession of Bierce, 171 La. 1047, 132 So. 783 (1931); Jarvis v. Prout, 247 So.2d 244 (La. App. 4th Cir.1971); Babin v. Thormander, 167 So. 241 (La.App. Orleans 1936); Murray v. Hagens, 143 So. 505 (La.App. 1st Cir.1932).
[5] La.C.C. art. 2970 provides as follows:

He is not responsible for what is stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence.
La.C.C. art. 2971 provides as follows:
No landlord or innkeeper, or their officers, clerks, agents, or employees shall be liable contractually or delictually under the provisions of the foregoing six articles to any guests or party of guests occupying the same apartments for any loss of cash, jewelry, rare art items, furs, cameras, or negotiable instruments sustained by such guests or party of guests by theft or otherwise, in any sum exceeding five hundred dollars, unless by special agreement in writing with the proprietor, manager or lessee of the hotel or inn a greater liability has been contracted for.
No guest shall be held bound by the limitation of value established in this Article if any of the following conditions occur:
(1) The landlord or innkeeper fails to provide a safe deposit facility for valuables.
(2) The landlord or innkeeper fails to conspicuously post this Article in the guest room and registration area.
(3) The guest avails himself of the safe deposit facility provided by the landlord or innkeeper.
[1] Armstrong also pointed out that two recent appellate decisions to the contrary, including Reilly v. Fairway View II Assocs. Ltd. Partnership, 544 So.2d 73 (La.App. 1st Cir.1989), "should be viewed with suspicion."