665 So.2d 753 (1995)
Donnie NORRED and Wife, Shirley Norred and Arlen J. Guidry and Wife, Linda J. Guidry,
v.
RADISSON HOTEL CORPORATION and Radisson Hotels International, Incorporated.
No. 95 CA 0748.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
*754 Robert P. Cuccia, Houma, for Plaintiffs/Appellees Donnie Norred, et al.
Joseph A. Reilly, Jr., Houma, for Defendants/Appellants Radisson Hotel Corp., et al.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages.

FACTS
On November 22, 1991, plaintiffs, Donnie and Shirley Norred and Arlen and Linda Guidry, were guests at the Radisson Hotel located at 315 Julia Street in New Orleans, occupying adjacent rooms. While the men watched television in the Guidrys' room, the ladies went next door to the Norreds' room to retrieve drinks from an ice chest. A handbag was placed between the door and the door frame of the Guidrys' room so that the ladies could reenter the room without the use of a key.
While the ladies were absent from the Guidrys' room, a man armed with a gun entered the room through the open door, threatened the two men, tied them up, taped their legs and mouths, and robbed them. When the ladies attempted to return to the Guidrys' room, they discovered that the door was locked. Unaware of the presence of the assailant and believing that the men were playing a trick on them, Mrs. Guidry attempted to climb from the balcony of the Norreds' room to the balcony of the Guidrys' room, but was unsuccessful. In the meantime, Mrs. Norred knocked on the door of the Guidrys' room, and the robber suddenly opened the door, pulled Mrs. Norred into the room, and threw her across the room. The robber then left the room. Mrs. Guidry began knocking on the door to the Guidrys' room, and, from inside, Mrs. Norred instructed her to alert hotel security that they had been robbed. Mrs. Guidry went next door to the Norreds' room to call hotel security and remained there until security personnel arrived approximately fifteen minutes later. The police arrived shortly thereafter. Mrs. Guidry then went to the Guidrys' room, where the robbery had occurred, and saw her husband in a shaken-up state. Mr. Guidry was no longer bound with tape when Mrs. Guidry entered the room.
On October 20, 1992, plaintiffs filed the instant action for damages, naming as defendants the Radisson Hotel Corporation and Radisson Hotels International, Incorporated (collectively referred to as the defendants hereafter). The petition alleged that the defendants were liable to the plaintiffs for damages arising from their failure to provide adequate security measures.
On January 4, 1994, a bench trial was held on the matter. On April 29, 1994, the trial court rendered judgment in favor of the plaintiffs, awarding the following damages: (1) Donnie Norred$15,000.00 for mental pain and suffering, $1,800.00 for loss of money and valuables, and $120.00 for past medical expenses; (2) Shirley Norred$20,000.00 for pain and suffering and $120.00 for past medical expenses; (3) Arlen Guidry$15,000.00 for pain and suffering, $600.00 for loss of money and valuables, and $80.00 for past medical expenses; and (4) Linda Guidry $10,000.00 for mental pain and suffering and $40.00 for past medical expenses.
On December 5, 1994, pursuant to a motion for new trial, the trial court rendered a second judgment, reducing Donnie Norred's and Arlen Guidry's awards for loss of money *755 and valuables to $500.00, in accordance with LSA-C.C. art. 2971, which limits an innkeeper's liability to $500.00 for a guest's loss of cash or valuables.[2]
The defendants appeal from this adverse judgment, assigning as the sole specification of error the trial court's award of damages for mental pain and suffering to Linda Guidry.[3] The defendants argue that Mrs. Guidry is not entitled to damages for the following reasons:
(1) Mrs. Guidry was not present during the incident giving rise to the mental anguish claims.
(2) Mrs. Guidry was not even aware that an incident was taking place until after it was over.
(3) Mrs. Guidry has not suffered any type of appreciable mental distress.
(4) Mrs. Guidry has had only one session with a psychologist, and that was for the sole purpose of accompanying her husband who was distraught over the incident and was the actual one for whom the treatment was intended.
However, Mrs. Guidry contends that the award of mental anguish damages to her is proper and is based on three separate and distinct theories of recovery:
(1) LSA-C.C. art. 2315 damages sustained by her as a direct victim of the armed robbery.
(2) LSA-C.C. art. 2315.6 damages sustained by her as a result of her husband's injuries.
(3) Damages due to the defendants' breach of a special, direct duty created by law, contract, or relationship as specified in Clomon v. Monroe City School Board, 572 So.2d 571 (La.1990).

DAMAGES FOR MENTAL ANGUISH
In 1990, the Louisiana Supreme Court overruled prior jurisprudence and allowed one to recover for her own mental anguish caused by injury to another in Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 570 (La.1990). However, the court imposed the following restrictions on this "bystander recovery":
(1) the claimant must view the accident which caused injury to the other or come upon the scene soon thereafter;
(2) the mental anguish must be reasonable;
(3) the mental anguish must be serious and foreseeable; and
(4) the claimant must have a close relationship with the injured person.
Following Lejeune, the supreme court decided Clomon v. Monroe City School Board, 572 So.2d 571 (La.1990). In Clomon, the driver of an automobile was allowed to recover for the mental anguish she suffered from hitting a child due to the defendant's negligence. The court found that Lejeune did not apply. The court then went on to explain that "the Lejeune court did not intend to modify or interrupt the development of rules or decisions permitting recovery for emotional distress from a tortfeasor who owed the plaintiff a special, direct duty created by law, contract or special relationship." Clomon, 572 So.2d at 575. The court then based its decision allowing recovery on a breach of a direct, special statutory duty which the defendant owed to the plaintiff. Clomon, 572 So.2d at 578.
In 1991, Guillory v. Arceneaux, 580 So.2d 990 (La.App. 3rd Cir.), writs denied, 587 So.2d 694 (La.1991), was decided. Guillory involved an accident in which someone was killed as a result, in part, of a third party's negligence. The plaintiff was involved in the accident and sought to recover for her own emotional distress. The court found Lejeune inapplicable because the plaintiff was not a bystander but a participant and that Clomon did not apply because there was no breach of a direct, statutory duty. Nevertheless, the court found that plaintiff did have a cause of action, based upon the defendant's breach of his general duty of care. The court reasoned that the plaintiff was physically involved in *756 the accident and suffered emotional injury as a result, which has long been compensable even with no accompanying physical injury. Guillory, 580 So.2d at 993-98.
Acts 1991, No. 782, § 1 enacted LSA-C.C. art. 2315.6, which provides as follows:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
Although it may seem that Article 2315.6 overrules Clomon and Guillory, it does not. There are basically two categories of cases allowing recovery for emotional distress: 1) traditional cases where defendant's negligence is aimed directly at the plaintiff, and 2) bystander recovery cases where the defendant's negligence is aimed at a third person and the plaintiff suffers emotional distress from having viewed the injury, as in Lejeune. Article 2315.6 deals solely with bystander recovery and does not interfere with traditional theories of negligent infliction of emotional distress. The Clomon/Guillory situation is, in reality, a traditional type of emotional distress case and not a bystander recovery situation. Therefore, that type of case should be analyzed according to traditional theories. See "Negligent Infliction of Emotional Distress: The Effect of Article 2315.6," 53 Louisiana Law Review 555, 558 (1992).
Turning now to the case under consideration, we must decide whether Louisiana law permits recovery for Mrs. Guidry's mental anguish.

A. Bystander Recovery

In the instant case, the defendants contend that Mrs. Guidry was not entitled to damages under LSA-C.C. art. 2315.6 because there was insufficient evidence to show (1) that Mr. Guidry suffered such harm that it would reasonably be expected that Mrs. Guidry would have suffered serious mental anguish from the experience or (2) that Mrs. Guidry sustained a "severe and debilitating" emotional injury as a result of witnessing her husband suffer.
A review of the jurisprudence indicates that "serious emotional distress" may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A nonexhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock. Lejeune v. Rayne Branch Hospital, 556 So.2d at 570, citing Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983).
In Blair v. Tynes, 621 So.2d 591, 601 (La. 1993), the supreme court held that a pedestrian's husband met his burden of proof for recovering damages for mental anguish under the bystander recovery rule without presenting proof of a clinical diagnosis, where he saw his wife struck and killed by an automobile, had led an active life and had a good employment record prior to the accident, but became withdrawn and introverted and did not work after the accident.
In Dixon v. Mid-South Rail Corporation, 580 So.2d 438, 442 (La.App. 2nd Cir.), writ denied, 584 So.2d 1160 (La.1991), the plaintiff *757 was a passenger in an automobile driven by her son who was killed when the automobile collided with a train. The court of appeal upheld the award of Lejeune damages based upon the psychological and emotional distress suffered by the plaintiff upon witnessing her son's demise.
In Matthews v. Turner, 566 So.2d 133, 135 (La.App. 5th Cir.), writ denied, 571 So.2d 645 (La.1990), the court affirmed a trial court judgment, awarding $50,000.00 to a mother who observed her daughter's pain and suffering for a forty-eight-hour period immediately preceding her daughter's death from peritonitis secondary to a ruptured appendix. The ruptured appendix had been misdiagnosed as a urinary tract infection. The court acknowledged the uncertainty of the extent of an award under Lejeune, but noted that her mother's "despondent plight during ... [her daughter's] fatal illness is well documented in the record." Matthews v. Turner, 566 So.2d at 135. See In re Medical Review Panel (Bilello), 621 So.2d 6, 11-12 (La.App. 4th Cir.), writ denied, 629 So.2d 1139 (La.1993).[4]
In Price v. Louisiana Department of Transportation and Development, 608 So.2d 203, 211 (La.App. 4th Cir.1992), writ application withdrawn, 613 So.2d 985 (La.1993), the court affirmed an award of Lejeune damages to the wife and son of a man who was struck, verbally assaulted, and wrongfully arrested by a police officer. Although the wife did not witness the battering of her husband, she arrived at the scene immediately thereafter and found him bleeding from the face. She witnessed the arrest and departure to Central Lockup. The arresting officer also threatened to arrest her. Due to her emotional distress, the wife's doctor prescribed Xanax. Unlike his mother, the son witnessed the officer strike his father, heard the verbal assaults, and witnessed the arresting officer taking his father away. The court noted that it was reasonably foreseeable that a minor child with Downs Syndrome who had witnessed such a traumatic event involving his father would suffer emotional distress beyond mere mental pain and anguish. The court noted that, after the incident, the son became violent and aggressive whenever he saw a police officer in uniform and also experienced behavioral problems in school.
In Price, 608 So.2d at 212, the court distinguished Thomas v. Schwegmann Giant Supermarket, Inc., 561 So.2d 992, 997 (La.App. 4th Cir.1990), in which the court disallowed the Lejeune claims of two grandchildren who witnessed their grandmother's detention and alleged abuse from shopping center security guards. The court noted that, in Thomas, there was no evidence that the children suffered emotional distress. The only basis for the claim was the parents' assertion that the two children experienced changes in their sleeping patterns as a result of their grandmother's detention.
In Martin v. Francis, 600 So.2d 1382, 1385 (La.App. 1st Cir.), writ denied, 606 So.2d 541 (La.1992), the court affirmed a trial court judgment which denied the parents' claim for LSA-C.C. art. 2315.6 damages after viewing their son's nearly severed toe which resulted from a granite tombstone falling on his foot. The court noted that seeing the nearly severed toe was undoubtedly extremely upsetting to the child's parents, but the record was devoid of any evidence that the distress the parents suffered was of a nature that could be categorized as "severe and debilitating."
The record in this case contains the testimony of Arlen and Linda Guidry, which reveals as follows:[5]
Arlen James Guidry testified that he was fifty-six years old and that he had been married to Linda for thirty-three years. Mr. Guidry testified that, on November 22, 1991, *758 he and his wife traveled to New Orleans with Mr. and Mrs. Donnie Norred to attend the LSUTulane football game and the Saints game. According to Mr. Guidry, they all checked in to the Radisson hotel at approximately 6:00 p.m., then went downstairs for a drink. The Guidrys and Norreds returned to the Guidrys' room at approximately 7:00 p.m., and the two men watched a basketball game on television while the two ladies sat out on the balcony. At approximately 9:00 p.m., the two ladies went next door to the Norreds' room to obtain drinks from an ice chest. A purse was placed between the door and the door frame of the Guidrys' room so that the ladies could reenter the room without the use of a key. About five minutes after the ladies left the Guidrys' room, a man who was armed with a gun pushed open the door and entered the room. After taking money from both men, the robber instructed Mr. Guidry to tie Mr. Norred's hands with a lamp cord. The robber then put the gun to Mr. Guidry's head, instructed him to lie down, and taped his hands together with duct tape. The robber then taped Mr. Guidry's legs together and wrapped his head and mouth with the tape. He did the same to Mr. Norred. The robber then began rummaging through the room, at which time Mrs. Norred knocked on the door. When Mrs. Norred looked through the window of the room, she saw her husband lying on the floor and began to scream. The robber then opened the door, pulled Mrs. Norred into the room, and threw her across the room. At that time, Mr. Guidry assumed that the robber had left, saw that the door was open, and closed the door with his feet. Mrs. Norred then shouted from inside the room for Mrs. Guidry to call hotel security. The tape was then removed from Mr. Guidry's and Mr. Norred's hands, feet, and head. Mr. Guidry described his state as "extremely nervous" and "rattled."
Mr. Guidry testified that he and his wife stayed in that room for the night, but he did not sleep very well. Mr. Guidry indicated that they left the hotel the following morning and went home. They did not attend the LSU game or the Saints game. According to Mr. Guidry, he has not been back to New Orleans since the incident, and the incident caused him to lose his self-confidence. Mr. Guidry has had recurring dreams about the robbery and now fears leaving his property unprotected. Mr. Guidry testified that he has seen a psychologist since the incident.
Linda Guidry testified that she was fifty-three years old. She stated that she was not in the room when the robbery occurred, but was next door in the Norreds' room. Mrs. Guidry indicated that, when she and Mrs. Norred returned to the Guidrys' room, the door was locked. She thought that the men were playing a trick on them, so she decided to try to get to the balcony of the Guidrys' room from the balcony of the Norreds' room. Mrs. Guidry was unable to get over to the Guidrys' balcony so she returned to the hallway, but Mrs. Norred was no longer there. Again, she thought they were playing a trick on her, so she went to the window of the Guidrys' room and looked in. At that time, Mrs. Guidry saw Mr. Norred lying on the floor, and Mrs. Norred screamed from inside the room for her to call the police because they had been robbed. Mrs. Guidry called the front desk, and, after hotel security arrived, Mrs. Guidry went to the Guidrys' room where she first saw her husband who appeared "nervous" and "shook up." She noticed tape on the floor, and she began rubbing Mr. Guidry's hands where hair had been removed by the tape. Mrs. Guidry was then asked to go to the Norreds' room while her husband was questioned. Mrs. Guidry indicated that she was very concerned about her husband because he was very "shook up."
Mrs. Guidry testified that she and her husband stayed throughout the night in the room where the robbery had occurred and that her husband did not sleep well. Mrs. Guidry stated that she "stayed up" because she was concerned about her husband. Mrs. Guidry testified that, since the incident, they have not returned to New Orleans and that her husband sleeps with a gun under the mattress and has put extra locks on the doors. According to Mrs. Guidry this incident has affected her "because it's affected him [her husband]."
On cross-examination, Mrs. Guidry acknowledged that the robber had already left *759 the room and hallway and made his escape by the time she realized that a robbery had occurred. Mrs. Guidry testified that her husband has seen a psychologist on two or three occasions and that she joined him for the first visit. Mrs. Guidry indicated that she did not feel that she needed therapy, but she felt that her husband needed it. Mrs. Guidry testified that she wanted to assist her husband in adjusting to whatever was bothering him. Mrs. Guidry indicated that the robbery has caused her to be more cautious.
After reviewing the record in the instant case and the criteria required to prove one's entitlement to damages under LSA-C.C. art. 2315.6, we conclude that Mrs. Guidry is not entitled to damages for mental anguish. The record reveals that Mrs. Guidry was not present during the robbery and was not even aware that a robbery had taken place until it was over. However, she did come upon the scene shortly after the robbery occurred. At that time, she saw her husband, who was obviously shaken up by the incident. Mr. Guidry was no longer bound at the time that Mrs. Guidry entered the room. She merely observed that hair had been removed from her husband's hands by the tape. Mrs. Guidry testified that her subsequent visit with the psychologist was primarily for her husband's benefit in that she wished to help him overcome his problems. Mrs. Guidry testified that she did not have dreams about the incident, but the incident caused her to be more cautious. We find that Mrs. Guidry's alleged mental anguish was not "severe and debilitating" as required by LSA-C.C. art. 2315.6 and the jurisprudence.

B. Negligent Infliction of Emotional Distress

It is well established that a claim for negligent infliction of emotional distress unaccompanied by physical injury is viable. Beis v. Bowers, 94-0178, p. 3 (La.App. 4th Cir. 1/19/95); 649 So.2d 1094, 1096; writ denied, 95-0429 (La. 3/30/95); 651 So.2d 847; Bordelon v. St. Frances Cabrini Hospital, 93-1331, p. 2, (La.App. 3rd Cir. 5/4/94); 640 So.2d 476, 478.
Any recovery for mental anguish tort damages must be based on LSA-C.C. art. 2315, which provides, in pertinent part, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The duty-risk analysis is used to assist our courts in determining whether one may recover under article 2315. Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983); Bordelon v. St. Frances Cabrini Hospital, 640 So.2d at 478. The pertinent duty-risk questions are: (1) Was the conduct in question a cause-in fact of the resulting harm? (2) Did the defendant owe a duty to the plaintiff? (3) Was the duty breached? and (4) Were the risk and the harm caused within the scope of protection afforded by the duty breached? Roberts v. Benoit, 605 So.2d 1032, 1041 (La.1991); Mart v. Hill, 505 So.2d 1120, 1122 (La.1987).
The Louisiana Supreme Court has limited recovery for negligent infliction of emotional distress to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." (Emphasis added). Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990); Scamardo v. Dunaway, 94-545, p. 6 (La.App. 5th Cir. 2/15/95); 650 So.2d 417, 420; Vallery v. Southern Baptist Hospital, 630 So.2d 861, 866 (La.App. 4th Cir.1993), writ denied, 94-0249 (La. 3/18/94); 634 So.2d 860. In Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d at 1096, the court listed various types of cases involving "genuine and serious" emotional distress: negligent transmission of a telegraph message announcing death, mishandling of corpses, failure to maintain, install, or repair consumer products, negligent damage to one's property while the plaintiffs were present and saw their property damaged, and cases allowing damages for fright or nervous shock where the plaintiff was actually in great fear for his personal safety. In Vallery v. Southern Baptist Hospital, 630 So.2d at 866, the court held that, where a plaintiff alleges and proves a genuine and reasonable fear of contracting an incurable and fatal disease, the Moresi requirements have been satisfied.
In the instant case, in order for Mrs. Guidry to be entitled to damages for negligent *760 infliction of emotional distress, an independent, direct duty must have been owed to her by the defendants, that duty must have afforded protection to the her for the risk and harm caused, that duty must have been breached, and the mental anguish suffered by her must have been genuine and serious.
The jurisprudence provides that an innkeeper has a duty to exercise a high degree of care in order to protect his guests against the tortious and criminal acts of third persons. Kraaz v. La Quinta Motor Inns, Inc., 410 So.2d 1048, 1053 (La.1982). Clearly, the hotel had a duty to protect its guest, Mrs. Guidry, against the criminal act of the assailant. Even assuming, as the trial court determined, that the defendants breached that duty and that the harm caused was within the scope of protection afforded by that duty, plaintiff was, nevertheless, required to prove her entitlement to damages.
The record reveals that Mrs. Guidry was unable to sleep on the night of the robbery, explaining that she "was concerned about him [her husband] more than anything." She also stated that she and her husband have not been to New Orleans since the incident. Mrs. Guidry testified that, since the robbery, her husband sleeps with a gun under his mattress, has put additional locks on the doors, and has recurring dreams about the robbery. Mrs. Guidry stated that the incident has affected her because of the effect it has had on her husband. Mrs. Guidry indicated that she accompanied her husband to see the psychologist on one occasion, but she did not feel that she needed therapy. Rather, she was merely attempting to help her husband overcome the problems which he was experiencing as a result of the robbery.
A review of the record convinces us that Mrs. Guidry failed to prove that she suffered from genuine and serious emotional distress as a result of the robbery. Rather, the testimony reveals that Mrs. Guidry primarily was concerned about her husband's condition following the robbery. Mrs. Guidry was seeking to help Mr. Guidry overcome the problems which he was experiencing. Other than Mrs. Guidry's experiencing one sleepless night, not returning to New Orleans (due in large part to her husband's desire not to do so), and being more cautious, the record does not support a finding that she experienced any suffering from the incident. Moreover, the record clearly does not indicate that she suffered the required "genuine and serious" emotional distress as a result of the robbery.
Because we have found that the record does not support an award of mental anguish damages to Mrs. Guidry under LSA-C.C. art. 2315.6 or for damages for the negligent infliction of emotional distress, we conclude that the trial court erred in its award of damages to Mrs. Guidry.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, awarding Mrs. Guidry damages for mental anguish, is reversed. Costs of this appeal are assessed against Mrs. Guidry.
REVERSED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] The December 5, 1994, judgment was amended by judgment, dated December 9, 1994, to correct a typographical error.
[3] We note that the only issue before us is whether Mrs. Guidry is entitled to damages for mental anguish under any theory of recovery. The amount of such an award is not at issue.
[4] In In re Medical Review Panel (Bilello), 621 So.2d 6, 11-12 (La.App. 4th Cir.), writ denied, 629 So.2d 1139 (La.1993), the court affirmed an award of LSA-C.C. art. 2315.6 damages in a medical malpractice action to a mother who witnessed her son's suffering and death due to the development of respiratory distress caused by a build up of fluid in the pericardial sac following surgery.
[5] We note that the defendants designated the record for appeal. The deposition of psychologist Marsha Redding was sent to this court. However, the deposition was not an exhibit to the record, and the part of the record designated for appeal does not indicate that the deposition was introduced into evidence. Therefore, the deposition is not properly a part of the record on appeal.