## WILSON v. IBERVILLE AMUSEMENT CO., Inc.
### No. 16979.

Court of Appeal of Louisiana.   Orleans.
June 13, 1938.

St. Clair Adams & Son, of New Orleans, for appellant.

Jos. Rosenberg, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit for $300 for damages for physical injuries alleged to have been sustained by plaintiff on December 14, 1937, when, as a spectator in the Palace Theatre, she was knocked down and trampled upon during a stampede caused by an alarm of fire.   The Iberville Amusement Company, Inc., proprietor of the Palace Theatre in which the accident occurred, which is made defendant, denied liability averring that its theatre was equipped with the most modern and fireproof devices, and that it was free from any negligence in the premises.

There was judgment below in plaintiff's favor in the sum of $200 and defendant has appealed.   Plaintiff has answered the appeal asking that the award be increased to the amount prayed for.

It is conceded that plaintiff, at the time of the accident, was a patron of the Palace Theatre and that during the performance someone in the audience shouted "fire" and "fight", and that as plaintiff endeavored to get into the aisle she was knocked down and trampled upon and sustained injuries to her back, hips and head.   It is also admitted that the doctrine of res ipsa loquitur has application with the result that defendant bears the burden of proving that it was

818

without fault. Lykiardopoulo v. New Orleans & C. R. Light & Power Company et al., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976. Defendant claims, however, to have sustained this burden and thus to have overcome the presumption of negligence.

The evidence shows that the projection room, in which the fire originated, was built in accordance with the specifications of the Building Code of the City of New Orleans as established by Ordinance No. 9357, C.C.S., section 101. The projection machine, itself, according to the uncontradicted testimony, was of the most modern type and in perfect condition and such as is used in the best motion picture theatres. The operator in charge of the projection room was an experienced operator. The films used were obtained from distributors handling the best productions. The particular film in use on the night of the fire was obtained from the Universal Film Exchange in the City of New Orleans. It was inspected by the operator before use by what is known as the "hand wind method", by which is meant that the operator passes his hand over the film as he rewinds it. There were a number of splices in the film and some of the sprocket holes were worn necessitating patching. The film was not a "first run reel". It had been used a number of times previously, but it was said to be in good condition. According to the testimony, the arc light which is used to project the image upon the screen, generates intense heat, so much so, that if the normal speed at which the film is run before the light, ninety feet per minute, is retarded by more than one-half, the film catches fire. The projector is equipped with automatic shutters operated by a fuse, the melting of which closes the shutters and keeps the heat from the film. On the night of the accident, seven hundred feet of the film which was being exhibited caught fire and was burned. The smoke, if not the flame, being visible to the audience, alarmed the patrons causing one or more persons to shout "fight" and "fire". The use of the word "fight", however, in connection with the appearance of smoke or flame from the projection room, is difficult to understand. The operator quickly extinguished the blaze and no damage other than the destruction of the film resulted from the fire itself, though several persons were injured in the ensuing panic.

Defendant contends that it employed every reasonable means of insuring the safety of its patrons and that upon the showing which we have endeavored to outline, it should be exonerated. Fire, it is said, will occasionally occur in connection with the exhibition of moving pictures no matter what precautions are taken to prevent it.

On the other hand, plaintiff points to the explanation of the fire given by defendant's operator as having been caused by the sticking of the film as an indication that there was something palpably wrong with the film which should and could have been discovered upon examination. It is said that it is impossible to have a fire if the film and the projector are in first-class condition and that since the film caught fire there must have been something wrong with it or with the machine. It is also said that the method of examination known as the "hand wind method" is not efficient and that it was defendant's duty to conduct a more circumspect and detailed examination of the films used and that the operator was guilty of negligence because, at the time of the fire, he had allowed the machine to rotate mechanically and was handing another reel to an assistant. Plaintiff also contends that it was the duty of defendant to prove the age of the film, the length of time it had been in the possession of the film exchange, the number of times it had been used, and the condition in which the film exchange had found it before its use by defendant.

It is invariably pointed out by defendants in cases of this sort that they are not insurers of the safety of their patrons, which, of course, is quite true. Nevertheless, proprietors of places of amusement, public resort and convenience, such as theatres, railroads, innkeepers, storehouses etc., owe a duty of great care, differing somewhat in degree, but all of a high order, to their customers to the end that they may escape injury while doing business with them. The obligation of this defendant was to use every device and employ every method sanctioned by the best practice of the motion picture industry as calculated to insure the safety of their patrons against fire hazard. Nothing less could satisfy defendant's obligation of reasonable care.

The record does not justify the conclusion that fire always signifies defective films or mechanism. The great heat of the arc light and the highly inflammable composition of the film, containing, as it does, gun cotton and camphor, might sometimes cause combustion, or so the testimony indicates, without any perceptible defect in film or projector, or carelessness on the

part of the operator. Reasonable precaution does not comprehend the unreasonable. For example, latent defects, which are not manifest by careful scrutiny, are not the responsibility of defendant. The film which ignited on this occasion was not a first run film and was not shown to have been inspected by the distributor before renting it to defendant. However, the practice of using films over and over again is shown to be general and a fourth run film, such as this one, was not at all unusual. While not inspected by the distributor, or, we should say, not proven to have been inspected by it, the film was examined by the operator of the projection machine. Some defects were found and remedied by "splicing", the generally accepted method. The projection room was constructed, as required by the local building code, of steel and concrete.

On the whole, we believe the defendant has overcome the presumption of negligence arising from the application of the doctrine of "res ipsa loquitur." The cause of the fire has not been proven and still remains conjectural, but we believe defendant has shown that it exercised every reasonable precaution and was free from negligence. It should not be required to do more.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed, and it is now ordered that there be judgment in favor of the defendant dismissing plaintiff's suit.

Reversed.