# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **21st day of March, 2025** are as follows:

**BY McCallum, J.:**

2024-C-00840    WILLIAM CAMPBELL VS. ORIENT-EXPRESS HOTELS LOUISIANA, INC., WINDSOR COURT HOTEL INC. OF DELAWARE, WINDSOR COURT HOTEL, L.L.C., WINDSOR COURT HOTEL LIMITED PARTNERSHIP, WINDSOR COURT MANAGEMENT LOUISIANA, INC., ABC SECURITY COMPANY, AND XYZ INSURANCE COMPANY (Parish of Orleans Civil)

COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT REINSTATED. SEE OPINION.

Justice Jeanette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

Crain, J., concurs and assigns reasons.

## SUPREME COURT OF LOUISIANA

## No. 2024-C-00840

## WILLIAM CAMPBELL

## VS.

## ORIENT-EXPRESS HOTELS LOUISIANA, INC., WINDSOR COURT HOTEL INC. OF DELAWARE, WINDSOR COURT HOTEL, L.L.C., WINDSOR COURT HOTEL LIMITED PARTNERSHIP, WINDSOR COURT MANAGEMENT LOUISIANA, INC., ABC SECURITY COMPANY, AND XYZ INSURANCE COMPANY

On Writ of Certiorari to the Court of Appeal, Fourth Circuit,
Parish of Orleans Civil

**McCALLUM, J.**[1]

In the early morning of Christmas day, 2008, William Campbell, a guest at the Windsor Court Hotel (the "Windsor Court" or the "hotel") in New Orleans, Louisiana, was robbed in the hotel's courtyard/driveway. Mr. Campbell was injured during the course of the robbery. He filed this lawsuit for personal injuries against the Windsor Court,[2] alleging negligence and strict liability theories of recovery, all arising from the hotel's status as an innkeeper and/or the owner of the property.

Louisiana law has historically recognized that an innkeeper "does not insure his guests against the risk of injury . . . resulting from violent crime;" however, our jurisprudence also reflects that an innkeeper "has a duty to take reasonable precautions against criminals." *Kraaz v. La Quinta Motor Inns, Inc.*, 410 So. 2d 1048, 1053 (La. 1982). Over the years, our courts have inconsistently interpreted

---

[1] Justice Jeannette Theriot Knoll, retired, heard this case as Justice *Pro Tempore*, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as an ad hoc for Justice Cade R. Cole.

[2] Also named as defendants are Orient Express Hotels Louisiana, Inc., Windsor Court Hotel, Inc. of Delaware, Windsor Court Hotel, L.L.C., Windsor Court Hotel Limited Partnership and Windsor Court Management Louisiana, Inc. (collectively, the "Windsor Court," "the hotel" or "defendants").

these principles. We granted the defendants' writ application to clarify the liability of an innkeeper for the criminal acts of third parties committed against a guest on its premises. This issue implicates tort liability under a duty/risk analysis, and more particularly, two distinct elements of a tort claim: duty; and scope of that duty. Our focus in this case is on whether the Windsor Court owed a duty to Mr. Campbell and, if so, whether the risk of harm encountered by Mr. Campbell fell within the scope of that duty. That is, if we find the Windsor Court owed a duty to Mr. Campbell, we then consider whether the risk of harm was within the scope of protection afforded by that duty.

After our *de novo* review of the record, we find that the Windsor Court owed a duty in this case, as we established in *Kraaz* – to take reasonable precautions against the criminal acts of third parties; *i.e.*, to provide a reasonably safe premises to its guests. However, we find that the scope of the Windsor Court's duty did not encompass the risk of the particular harm Mr. Campbell suffered. The Windsor Court met its burden on summary judgment by showing a lack of factual support for an essential element of Mr. Campbell's claim. *See* La. C.C.P. art. 966 D (1), *infra*. Mr. Campbell then failed to produce factual support sufficient to establish he would be able to satisfy his evidentiary burden of proof at trial. *Id*. On this basis, the trial court properly granted the defendants' summary judgment motion and the appellate court erred in reversing that judgment.

Accordingly, and for the reasons that follow, we vacate the appellate court's judgment and reinstate the trial court's judgment, granting defendants' motion for summary judgment.

**FACTS AND PROCEDURAL HISTORY**

The Windsor Court is a luxury hotel located on Gravier Street in New Orleans, Louisiana. A courtyard with two arched driveways and a "walk-in" pedestrian

2

entrance stand as its main entrances. Other than these openings, the courtyard is enclosed by a wall approximately fourteen feet in height.

William Campbell, consequent to his work, was a frequent guest at the Windsor Court. According to his petition for damages, around 2:00 a.m. on December 25, 2008, after having spent time at Harrah's Casino,[3] Mr. Campbell walked back to the hotel. When he arrived at the courtyard's entrance, he noticed an "unfamiliar car parked in the drive" with two "unknown female" occupants. One of the females called to him and he initially ignored her. However, Mr. Campbell "decided to be a good Samaritan and approach the vehicle to offer assistance." He walked to the car and had a brief conversation with its occupants, when "suddenly and without warning, [he] was robbed." He was injured when the car sped away, trapping him half-way inside the car as he tried to retrieve a "substantial amount of cash" that was stolen from him before he fell to the street.

Two surveillance videos introduced with the summary judgment motion confirm the robbery, but they provide additional details of what happened that night. It is true, as Mr. Campbell alleged, that the car initially passed up the entrance to the courtyard while traveling on Gravier Street, came to a stop and then backed up to enter it.[4] Another video also confirms that Mr. Campbell was walking towards the entrance to the hotel when he turned around and walked to the car. Approximately six to seven seconds elapsed from when Mr. Campbell is first seen on the surveillance video with the car approaching behind him and when he turned around and began walking to the car.

The video then shows that, approximately six seconds after he reached the car, Mr. Campbell pulled from his pocket that "substantial amount of cash" and appeared

[3] Harrah's Casino - now, Caesar's New Orleans – is located across the street from the Windsor Court.

[4] Mr. Campbell is not seen on this particular surveillance video.

3

to show the cash to the occupants of the car. He put the cash back into his pocket and leaned towards the car where he remained for one minute and forty-six seconds, appearing to engage in conversation with the car's occupants. At that point, Mr. Campbell again reached into his pocket and retrieved the cash. Mr. Campbell does not dispute this fact. Within two seconds of Mr. Campbell's appearing to again show the money to the car's occupants, the car began to drive away, dragging him with it. There is no dispute that, prior to driving off, one of the car's occupants seized the cash from Mr. Campbell's hands.

In his deposition, Mr. Campbell described the incident as follows:

> . . . the girl on the passenger side, I had hold of it [the cash], she had hold of it. I wasn't going to let it go, and she - - we wound up at a tagging match [sic], and I wound up being pulled into the car. Half my body was inside that car. . . . And then she stepped on the. . . accelerator. . . .So I turned loose and fell on the pavement. . . .

Mr. Campbell's lawsuit against the Windsor Court asserts claims of negligence and strict liability as follows: allowing a dangerous condition to exist; failing to properly warn, maintain and secure the premises; failing to warn guests of a dangerous condition on the premises; failing to ensure the safety of its guests; failing to provide adequate security; and "[h]osting inadequate lighting in the courtyard."

In 2022, the defendants filed a summary judgment motion which the trial court granted. In its reasons for judgment, the trial court found that Mr. Campbell "failed to meet his burden of proving that there was a legal duty to protect him against this specific criminal act."[5] The court of appeal reversed, finding genuine issues of

---

[5] The trial court observed: "Louisiana law is clear that an innkeeper has a duty to take reasonable measures to protect against criminal activity, but that duty does not extend to unforeseeable or unanticipated criminal acts of independent third persons." It then found that Mr. Campbell "failed to meet his burden of proving that there was a legal duty to protect him against this specific criminal act," noting that it was not "reasonably foreseeable that the Plaintiff would approach an unknown vehicle with unknown occupants, converse with said occupants, and pull out money and put it in reach of the occupants of that vehicle such that the Windsor Court's duty extends to protect or prevent such a series of events and any resulting injury."

material fact as to whether "this particular incident was not [sic] foreseeable, thus, imposing a duty of protection on Windsor Court." *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 23-0731, p. 8 (La. App. 4 Cir. 4/25/24), --- So. 3d ----, ---- 2024 WL 1793303 at *4. Defendants filed a writ application with this Court which we granted. *Campbell v. Orient-Express Hotels Louisiana, Inc.*, 24-00840 (La. 11/14/24), 395 So. 3d 1163.

## LAW AND DISCUSSION

### *Standard of review*

As with all appeals of summary judgments, we review this matter *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there are genuine issues of material fact, and whether the mover is entitled to judgment as a matter of law. *Diaz-Molina v. Flower*, 23-01135, p. 3 (La. 12/19/23), 374 So. 3d 950, 952; *see also*, La. C.C.P. art. 966(A)(3). A fact is considered material if its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. *Evans v. Abubaker, Inc.*, 23-00955, p. 6 (La. 5/10/24), 384 So. 3d 853, 858. "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case." *Id.*, 23-00955, p. 7, 384 So. 3d at 858.

While the burden of proof rests with the party moving for summary judgment, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, "the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art 966 D(1). When a motion for summary judgment is made and supported,

5

the adverse party may not rest on the mere allegations or denials of his pleadings; he must, by affidavits or otherwise, "set forth specific facts showing that there is a genuine issue for trial." La. C.C. art. 967(B); *Corbajal v. Chris Owens French Quarter Parade, LLC*, 24-00191, p. 4 (La. 5/21/24) 385 So. 3d 236, 238. (Citation omitted). "Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Id.*

In this matter, defendants will not bear the burden of proof at trial. Therefore, as the party moving for summary judgment, the defendants' burden is to show an absence of factual support for one or more elements essential to plaintiffs' claim.

### Innkeeper's liability for third party criminal acts

Our task in this case is to clarify the liability of innkeepers for criminal acts of third parties occurring on their premises. This is determined by employing a duty/risk analysis. Our jurisprudence reflects some discrepancy in the analytical approach of the duty/risk analysis and the line between the distinct elements of duty and scope of duty is often blurred in causes of action involving allegations of negligence. Some cases conflate "duty" with the "scope of duty," while others use the concepts interchangeably. This is problematic as the duty/risk analysis breaks down into two separate considerations: duty and scope of duty. Each is a necessary component for the imposition of tort liability and is to be considered independently of the other.[6]

In their motion for summary judgment, defendants argue Mr. Campbell will be unable to prove "at least two elements of the duty risk analysis: 1) that Windsor Court owed a duty to Plaintiff under the facts and circumstances presented; and 2) that any action or inaction on the part of Windsor Court was a legal cause of the

---

[6] We do not suggest that these are the only elements to be considered in the duty/risk analysis. Other elements, identified *infra*, factor into the determination of liability. However, for purposes of the issue presented in this case, we need only address the issues of "duty" and "scope of duty."

incident." Mr. Campbell counters that the Windsor Court had a duty to protect him from a risk "they created themselves," should have foreseen the incident, and had a duty to prevent it, because:

> . . . it was foreseeable that a criminal would enter an unguarded and totally unsecured courtyard late at night to prey upon an unsuspecting guest, especially considering the location of the hotel across from a casino, the reputation of the hotel for hosting wealthy and high profile guests, and the unfortunate fact that New Orleans, at the time, was one of the most criminally active cities in the country. It was foreseeable that a guest who has been given countless reassurances as to the safety of the hotel and courtyard might feel comfortable approaching a vehicle that is allowed to enter the courtyard and sit there for an indeterminate amount of time.

Mr. Campbell additionally maintains that there are genuine issues of fact as to the Windsor Court's liability. We disagree.

We start our analysis with La. C.C. art. 2315, the foundation of tort liability. Under Article 2315 A, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2315 is consistent with this Court's recognition of the almost "universal duty on the part of [a] defendant in negligence cases to use reasonable care so as to avoid injury to another." *Doe v. McKesson*, 21-00929, p. 8 (La. 3/25/22), 339 So. 3d 524, 531 (quoting *Boykin v. Louisiana Transit Co., Inc.*, 96-1932, p. 10 (La. 3/4/98), 707 So.2d 1225, 1231).

Whether a claim sounds in negligence or in premises liability, courts employ a duty/risk analysis; "the result under either should be the same." *Farrell v. Circle K Stores, Inc.*, 22-00849, p. 5 (La. 3/17/23), 359 So. 3d 467, 473; *see also*, *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095, p. 7 (La. 3/10/06), 923 So. 2d 627, 632-33 (the duty/risk analysis is the "standard negligence analysis" to be employed in determining whether liability is imposed under Article 2315). In *Malta v. Herbert S. Hiller Corp.*, 21-00209, p. 11 (La. 10/10/21), 333 So. 3d 384, 395, we reiterated

7

the well-settled law that the determination of whether liability exists under a duty/risk analysis requires that a plaintiff prove "five separate elements":

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and (5) proof of actual damages (the damages element).

"If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Id.*

Although there is no requirement that these elements be evaluated in any particular order,[7] in any negligence action the threshold issue is whether the defendant owed the plaintiff a duty. *Pinsonneault v. Merchants & Farmers Bank & Tr. Co.*, 01-2217, p. 7 (La. 4/3/02), 816 So. 2d 270, 276. This is the logical starting point as, absent a recognized duty, a defendant cannot be held liable and there is no need to inquire further. *See Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 10 (La. 11/30/99), 752 So. 2d 762, 769 (where the court "found that no duty was owed, [it did] not reach the other elements of the duty-risk analysis that must be proven in establishing a negligence claim.").

Whether a duty is owed is a question of law. *Pinsonneault*, 01-2217, p. 7, 816 So. 2d at 276. Whether a particular risk falls within the scope of that duty, by contrast, "is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty." *Malta*, 21-00209, p. 17, 333 So. 3d at 399. However, "[t]he determination of legal cause/scope of the duty involves a purely legal question." *Id.*, 21-00209, p. 18, 333 So. 3d at 399.

---

[7] *See Mathieu v. Imperial Toy Corp.*, 94-0952, p. 5 (La. 11/30/94), 646 So. 2d 318, 322 ("In deciding this case through the application of the duty/risk analysis, we choose to first examine the issue of whether and, if so, what type of duty the officers owed to Mr. Mathieu.").

8

With these general principles in mind, we turn to the specific elements of the duty/risk analysis as they relate to the allegations of negligence at issue in this case.

### *Duty*

Duty "may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Morris v. Orleans Par. Sch. Bd.*, 553 So. 2d 427, 429 (La. 1989) (quoting *Prosser and Keeton on the Law of Torts* (5th ed. 1984)). The focal inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. *Farrell v. Circle K Stores, Inc.*, 22-00849, p. 6 (La. 3/17/23), 359 So. 3d 467, 473; *Malta*, 21-00209, p. 11, 333 So. 3d at 395. There is no specific statutory provision governing an innkeeper's liability for the criminal acts of third parties. Therefore, we look to general principles of fault (Article 2315) and our jurisprudence to determine whether the Windsor Court owed a duty.[8]

Louisiana law was once clear that the duty to protect business patrons, including patrons of a hotel, did not extend to the unanticipated criminal acts of a third person. A duty of care was held to arise only when the owner of the business had knowledge, or could be imputed with knowledge, that a third person's intended criminal conduct was about to occur, and it was within the power of the owner to protect against the criminal act. *See Fredericks v. Daiquiris & Creams of Mandeville, L.L.C.*, 04-0567 (La. App. 1 Cir. 3/24/05), 906 So. 2d 636; *Cangiano v. Forte Hotels, Inc.*, 00-40 (La. App. 5 Cir. 10/31/00), 772 So.2d 879, 881; *Coblentz*

---

[8] *See*, *e.g.*, *Hill v. Lundin & Associates, Inc.*, 256 So. 2d 620, 622 (1972) ("Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature. . . . Where the rule of law is jurisprudential and the court is without the aid of legislative intent, the process of determining the risk encompassed within the rule of law is nevertheless similar. . . . The same policy considerations which would motivate a legislative body to impose duties to protect from certain risks are applied by the court in making its determination.") (Internal citations omitted).

*v. N. Peters Parking, Inc.*, 533 So. 2d 98, 102 (La. App. 4 Cir. 1988); *Ballew v. Southland Corp.*, 482 So. 2d 890 (La. App. 2 Cir. 1986).

In *Kraaz*, however, this Court redefined the duty of an innkeeper to its guest, and found as follows:

> An innkeeper does not insure his guests against the risk of injury or property loss resulting from violent crime. LSA–C.C. art. 2970, supra.[9] The innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. *Wilson v. Iberville Amusement Co.*, 181 So. 817 (Orl. [La]. App.Ct.1938). Thus, a guest is entitled to a high degree of care and protection. *See Galland v. New Orleans Public Service Inc.*, 377 So.2d 84 (La. 1979), and *Green v. TACA*, 304 So.2d 357 (La. 1974). The innkeeper has a duty to take reasonable precautions against criminals.

*Id.*, 410 So. 2d at 1053.

The duty to protect against third party crime was reexamined in *Posecai*. The Court observed that the determination of whether a duty is to be imposed requires a court to "make a policy decision in light of the unique facts and circumstances presented," instructing that, in making that decision, "[t]he court may consider various moral, social, and economic factors. *Id.*, 99-1222, pp. 4-5, 752 So. 2d at 766. Among these factors are the "deterrence of undesirable conduct, avoiding the deterrence of desirable conduct, compensation of victims, satisfaction of the community's sense of justice, proper allocation of resources (including judicial resources), predictability, and deference to the legislative will. *Reynolds v. Bordelon*, 14-2362, p. 8 (La. 6/30/15), 172 So. 3d 589 (quoting Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5.02 (2004)).[10]

---

[9] At the time, La. C.C. art. 2970 provided: "He (the innkeeper) is not responsible for what is stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence."

[10] As the *McKesson* Court observed, "[i]n *Posecai*, this court listed the elements with a slight variation: "fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and institutions are evolving." *McKesson*, 21-00929, p. 5 n.7, 339 So. 3d at 542.

An application of these factors will determine whether a duty exists. First, the imposition of a duty on innkeepers to take reasonable precautions to protect their guests from third party criminal activity would certainly have the effect of deterring and avoiding undesirable conduct (*e.g.*, an innkeeper's failure to provide security measures when criminal activity is a known problem). Imposing a duty may also have the added effect of deterring crime, itself. Second, compensation of victims is an important factor in all tort actions; our jurisprudence recognizes "the two guiding principles of tort damages—to deter wrongful conduct and to make the innocent victim whole." *Bellard v. Am. Cent. Ins. Co.*, 07-1335, p. 20 (La. 4/18/08), 980 So. 2d 654, 668. Imposing a duty on innkeepers ensures that, where the duty/risk elements are met, an innkeeper will be answerable to an innocent victim in damages and the victim will be made whole. This also serves the purpose of satisfying the community's sense of justice. Third, in considering the proper allocation of resources (including judicial resources), there are relatively few cases involving the liability of an innkeeper for crimes against its guest. This leads to the conclusion that judicial resources will not be unduly burdened by the imposition of a duty, particularly considering that some form of a duty has historically been recognized.

Predictability[11] also weighs in favor of the imposition of a duty. An innkeeper is in a better position than a victim to analyze the risks of criminal activity on its premises and to protect against that risk. *See Pinsonneault*, 816 So.2 d at 278; *Posecai*, 752 So. 2d at 768 (business owners are in the best position to appreciate the crime risks posed on their premises and to take reasonable precautions to counteract those risks). Deference to the legislative will, the final factor, is reflected

---

[11] Predictability has not been expressly defined by our case law in the context of the duty/risk analysis. It generally means "capable of being predicted: able to be known, seen, or declared in advance." www.merriam-webster.com/dictionary/predictability.

in Article 2315 which imposes broad liability on anyone who "causes damage to another" and weighs in favor of a duty.

An examination of these factors thus reinforces that the holding in *Kraaz* – that an innkeeper has a duty to take reasonable precautions against criminals – achieves the purposes for which a duty is to be imposed. Accordingly, we reaffirm the duty of an innkeeper to take reasonable precautions to protect its guests from criminal acts of third parties.

Our holding is largely consistent with *Posecai*; however, we find that the *Posecai* Court, too, merged the concept of duty and scope of duty into a single consideration, stating:

> . . . although business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts *when those acts are foreseeable*. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. *See Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La.1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.

*Id.,* 99-1222, p. 5, 752 So. 2d at 766 (emphasis added)*; see also*, *Pinsonneault*, 01-2217, p. 7, 816 So. 2d at 276 (quoting *Posecai* and noting that the determination of "when a crime is foreseeable is a critical inquiry in the duty equation."). The inclusion of "reasonable foreseeability" in the initial determination of an innkeeper's duty to its guests is antithetical to the broad principle of fault of Article 2315 and the long-recognized special relationship between an innkeeper and its guests which warrants the imposition of a duty.[12] Given the distinction between "duty" and "scope of duty," we find the issue of foreseeability to be a factor more properly considered

---

[12] *See, e.g., Salafian v. Gabriel*, 13-1399 (La. App. 4 Cir. 7/16/2014), 146 So. 3d 753; *Landry v. St. Charles Inn, Inc.*, 446 So. 2d, 1246, 1249 (La. App. 4 Cir. 1984) (because "the relationship between an innkeeper and his guest as a special one, . . . [t]he innkeeper is thus required to exercise a high degree of care in order to protect his guests against the tortious acts of third persons.").

in determining whether a risk is within the scope of a duty owed. We need look no further than the *Posecai* decision for support of this finding. The *Posecai* Court adopted the following balancing test to determine whether a business owes a duty of care to protect its customers from the criminal acts of third parties, stating:

> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and *the extent of the defendant's duty*. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery.

*Id*., 99-1222, pp. 8-9, 752 So. 2d at 768 (emphasis added).

The "extent" of a defendant's duty to which the *Posecai* Court refers here is equivalent to the "scope" of the defendant's duty. A duty must first be established, before the "extent"/scope of that duty is considered. Foreseeability of crime risk and gravity of the risk are factors to be weighed in the scope-of-duty inquiry, rather than the determination of duty at the outset. We thus disagree with defendants that the Windsor Court owed no duty "under the facts and circumstances presented." Whether the Windsor Court, as an innkeeper, owed a duty to its guests, including Mr. Campbell, is a legal issue not defined by facts and circumstances. As a matter of law, we find that the Windsor Court owed a duty to take reasonable precautions to protect its guests from criminal acts of third parties; *i.e*., to provide a reasonably safe environment free of criminal activity.

### Scope of duty

The facts and circumstances of a case do have a role in the duty/risk equation. They are critical in determining whether the scope of a defined duty included the particular risk of the harm encountered. Although we found that the Windsor Court owed a duty to Mr. Campbell, under the facts and circumstances of this case, we find

13

it clear that Mr. Campbell cannot meet the "scope of the duty" element of his claim. That is, the scope of the duty owed by the Windsor Court did not encompass the risk of the particular harm and injury Mr. Campbell suffered.

In *Roberts v. Benoit*, 605 So. 2d 1032, 1045 (La. 1991), on reh'g (May 28, 1992), this Court explained that:

> . . . in determining the limitation to be placed on liability for a defendant's substandard conduct – i.e. whether there is a duty-risk relationship – we have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Restated, the ease of association inquiry is simply: "How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? … Absent an ease of association between the duty breached and the damages sustained, we have found legal fault lacking.

(Citations omitted). It follows that, in our scope-of-duty analysis, we must examine how easily Mr. Campbell's injuries can be associated with the Windsor Court's duty to take reasonable precautions to protect its guests from criminal acts of third parties.

While the existence of duty is a legal question, "[t]here is no 'rule' for determining the scope of the duty." *Roberts*, 605 So. 2d at 1044. "The scope-of-the-duty inquiry is fact sensitive and ultimately turns on a question of policy as to whether the particular risk falls within the scope of the duty." *Malta*, 21-00209, pp. 17-18, 333 So. 3d at 399. The extent (scope) of protection owed by a defendant to a particular plaintiff is determined on a case-to-case basis so as to avoid making a defendant an insurer of all persons against all harms. *Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.,* 96-3090, p. 7 (La. 9/9/97), 699 So. 2d 35, 39. As the *Todd* Court further observed, "[i]n some instances a risk may not be found within the scope of a duty where the circumstances of that particular injury to that plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty." *Id*. This principle was first recognized in *Hill v. Lundin & Associates, Inc.*, 256 So. 2d 620, 622 (La. 1972):

> Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry.
> Prosser, Law of Torts (3rd ed. 1964), 282.

The importance of foreseeability in the scope-of-duty inquiry was emphasized in *Posecai*:

> The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. *The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises*, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.

*Id.*, 99-1222, pp. 8-9, 752 So. 2d at 768 (emphasis added).

At issue in *Posecai* was the liability of Sam's Wholesale Club for the armed robbery of a patron in its parking lot. Introduced at trial was evidence of three robberies, or "predatory offenses" (crimes against the person)[13] on Sam's premises in the six and a half years preceding the incident, and eighty-three predatory offenses at thirteen businesses on the same block. The Court found that only one of the three offenses bore a similarity to the crime at issue and, given the large number of people who use the parking lot, this one robbery "in all those years indicates a very low crime risk." *Id.*, 99-1222, p. 9, 752 So. 2d at 769. Notably, the Court discounted the evidence of the eighty-three offenses on the same block, stating: "[a]lthough the neighborhood bordering Sam's is considered a high crime area by local law enforcement, the foreseeability and gravity of harm in Sam's parking lot remained slight." *Id.*, 99-1222, p. 10, 752 So. 2d at 769. The court concluded that, under the

---

[13] Those offenses included the robbery of a delivery man who was sleeping near a loading dock after hours, at 1:00 in the morning, the mugging of a person walking across the parking lot and another incident where a woman was attacked and her purse stolen by her husband.

facts and circumstances of the case, Sam's had no duty to protect the plaintiff from the criminal acts of third parties.

Later, in *Pinsonneault*, the Court reiterated that under *Posecai*, "while the existence, frequency, and similarity of prior incidents of crime on the premises is an important consideration in the duty determination, other factors, such as the location, nature, and condition of the property should also be taken into account." *Pinsonneault*, 01-2217, p. 9, 816 So. 2d at 277. The *Pinsonneault* Court found no duty on the part of a bank to provide security at its ATM machine where the victim was killed during a robbery in the early morning hours. Fundamental to the court's finding was that there had only been two prior incidents at the bank in fourteen years, both of which occurred during banking hours inside the bank, the most recent of which occurred three years before the incident at issue. Because there were no similar crimes and "no crimes against any bank patrons prior to the random, unprovoked attack on [the victim]. . . . [the bank] did not possess the requisite foreseeability for the imposition of a duty to employ heightened security measures for the protection of patrons of its night depository." *Id.*[14]

---

[14] The *Pinsonneault* Court had "no difficulty determining the defendant bank had a duty to implement reasonable security measures," largely because it had adopted a written security plan "designed to maximize security for bank employees, [and] *the public*, . . . against crime. . . ." *Id.*, 01-2217, p. 11, 816 So. 2d at 278 (emphasis supplied). It further observed that the bank "through its own security manual, recognized a duty to provide a reasonably safe place for its patrons to conduct normal banking business. In fact, not only did the bank recognize a duty to its patrons through the adoption of a written security plan, it took affirmative steps in furtherance of that plan." *Id.*, 01-2217, pp. 10-11, 816 So. 2d at 278. The Court ultimately found that the bank did not breach any duty regarding security.

As previously indicated, the *Pinsonneault* Court noted that "while the existence, frequency, and similarity of prior incidents of crime on the premises is an important consideration in the duty determination, other factors, such as the location, nature, and condition of the property should also be taken into account." *Id.*, 01-2217, p. 9, 816 So. 2d at 277. However, the Court did not expressly expound on the role that these factors may have played in its foreseeability determination. Rather, the Court focused on whether the bank breached its duty to the decedent and on the efficacy of the various security measures undertaken by the hotel. It then concluded: "Given the absolute absence of this type of crime in Vernon Parish and the absence of significant crime in the area near the bank, there is no basis for determining an attack at the night deposit was sufficiently foreseeable such that the bank was obligated to upgrade security." *Id.*, p. 18, 816 So. 2d at 282.

Most of the cases addressing a business owner's liability for the criminal acts of third parties pre-date *Posecai, Pinsonneault*, and their progeny, thus we limit our discussion to those cases arising in their wake. We also note that there are relatively few cases specifically addressing foreseeability in the context of an innkeeper's liability for the criminal acts of third persons. However, the post-*Posecai* cases considering this issue confirm that there must be some element of foreseeability for a third party's criminal act to fall within the scope of a business' duty to protect its guests and to impose liability. Where there is no foreseeability, there is no liability. *See Posecai; Boudreaux v. Papa Bear's Pizza, LLC*, 16-1173, p. 10 (La. App. 1 Cir. 4/26/17), 220 So. 3d 84, 91 (no duty owed to patron who was struck in the face; implicitly, the court found that plaintiff failed to demonstrate the foreseeability of the criminal conduct as plaintiff "presented no evidence of the existence, frequency, or similarity of prior incidents involving patrons in Mike's Bar being unexpectedly punched"); *Mackey v. Jong's Super Value No. 2*, 41,440, p. 8 (La. App. 2 Cir. 9/27/06), 940 So. 2d 118, 123 (where victim was shot in grocery store by her boyfriend, the foreseeability and gravity of harm were "extremely minimal," as there had not been any criminal offenses at the store in five years, and the shooting occurred at 9:00 a.m. which was not seen as a "high crime time of day" by the plaintiff's own expert despite evidence in the form of affidavits of local residents that there had been six or seven murders in the surrounding area); *Lee v. B & B Ventures*, 00-1734, p. 5 (La. App. 4 Cir. 5/23/01), 793 So. 2d 215, 217-18 (where high school student was shot and killed in a parking lot after a school fundraiser, because "the record [was] devoid of any evidence or testimony suggesting prior criminal activity on the premises of the Prime Time Disco" the school board "did not possess the requisite degree of foreseeability for the imposition of a duty to provide additional security in its parking lot. Nor was the degree of foreseeability sufficient to support a duty to implement any lesser security measures."); *Marmer v.*

17

*Queen of New Orleans at the Hilton*, 00-1598, pp. 10-11 (La. App. 4 Cir. 5/16/01), 787 So. 2d 1115, 1121 (assault on patron at casino boat was not reasonably foreseeable, where there were no prior instances of criminal activity in the boat's restroom and "virtually no violent criminal activity on its premises," and the casino "had no reason to suspect that [the attacker] would harm someone."). Clearly, the foreseeability element does not impose clairvoyance on a defendant.

Conversely, where the criminal act of a third party is foreseeable, courts have imposed liability. One example is *Dearmon v. St. Ann Lodging, L.L.C.*, 18-0994 (La. App. 4 Cir. 3/27/19), 267 So. 3d 639, a case on which Mr. Campbell heavily relies. Mr. Campbell maintains that *Dearman* is "directly on point," as it involved an attack on hotel guests in their room, where, like here, the hotel had no prior criminal activity. We find Mr. Campbell's reliance on *Dearmon* to be misplaced. Although the court of appeal found genuine issues of fact as to the extent of the hotel's duty to the plaintiffs, there were clear, unmistakable circumstances which made the attack foreseeable – the night auditors "noticed 5 'shady' looking guys walk passed [sic] the front desk to the elevators;" the hotel's security, too, observed them on monitors and contacted the front desk; there was a noise complaint from a guest on the fifth floor and when security and the night auditor went to the fifth floor, they heard commotion and someone shouting "get on the floor! Put your head down #$&*%!," at which point security disengaged and contacted the police. *Id*., 18-0994, p. 5, 267 So. 3d at 643.[15]

Mr. Campbell also relies on *Goldstein v. Chateau Orleans, Inc*., 20-0401 (La. App. 4 Cir. 11/12/21), 331 So. 3d 1027, *writ denied*, 21-01852 (La. 2/15/22), 332 So. 3d 1183, to support his claim that foreseeability does not depend solely on the

---

[15] The plaintiff's expert found that the failure of the hotel's employees and security staff to intervene and prevent the criminal activity amounted to inadequate security measures. The court observed that no evidence was introduced to counter this, or any other, of the expert's conclusions.

existence of prior similar incidents. In *Goldstein*, the court of appeal articulated specific grounds upon which it found an attack on the plaintiff in a timeshare unit he leased for a week to be foreseeable.[16] Finding that the trial court improperly limited its analysis to the lack of any prior incidents, the court looked to *Pinsonneault*'s instruction that "location, nature, and condition of property should also be taken into account." *Id.*, 20-0401, p. 12, 331 So. 3d at 1037. It then cited the following factors as evidence that the attack on plaintiff was foreseeable: the door to his room was cracked, a security defect of which the defendant was aware; the lack of any staff on duty; the existence of only live-feed cameras (the court finding it "reasonable to assume that someone should have been on-duty monitoring the cameras to ensure patrons are able to get in and uninvited individuals stay out"); and the location of the attack (noting the "crime took place in the French Quarter during Mardi Gras week. Both Louisiana federal and state courts recognize the French Quarter as a high crime area"). *Id.*, pp. 16-17, 331 So. 3d at 1039.

Curiously, the court intimated that the fact that the timeshare facility had security measures in place confirmed the foreseeability of the attack. It stated:

> Both *Pinsonneault* and *Chatman* reasoned that the enacted security measures were preventative measures, thus suggesting that even though a violent crime had not happened, the crime was foreseeable. The same reasoning applies in the instant case. The cameras, security gate, and spike-topped gates at the Chateau were in place because third parties entering the premises and committing a crime was a foreseeable possibility that the unmanned cameras were meant to prevent or, at a minimum deter, criminal acts [sic]. Without speculating on how the assailants got in, it is not unreasonable to assume that the staff's presence and a secure door would have been a strong deterrent.

*Id.*, pp. 16-17, 331 So. 3d at 1039.

---

[16] While this Court may have viewed the criteria by which the court of appeal found the attack to be foreseeable differently, the writ application with this Court did not concern foreseeability or the scope-of-the-duty issue; it raised issues only with respect to the court of appeal's reallocation of fault and reduction of the damages award.

Mr. Campbell likewise relies on *Chatman v. S. Univ. at New Orleans*, 15-1179 (La. App. 4 Cir. 7/6/16), 197 So. 3d 366.  In *Chatman*, the plaintiff, a student who was attacked and seriously injured in an altercation in her on-campus apartment with her roommate and her roommate's 16-year-old cousin, brought suit against the university for her damages.  The evidence at trial included the university's Residential Housing Rules which set forth certain rules for its students who resided on-campus, including a limitation on the number of occupants allowed per apartment (two), the length of time overnight guests could visit (forty-eight hours) and a prohibition against minor children spending the night.  Evidence was also adduced that each of the university's apartment buildings had a "community assistant ("CA") who was described as a 'leader and advisor' who 'enforce[d] policies to help ensure the safety and well-being of students.'" *Id*, 15-1179, p. 3, 197 So. 3d at 370.

The court of appeal phrased the issue before it as "whether there is an 'ease of association' between SUNO's housing policies that restrict visits by non-resident, minor guests and the risk of a violent physical attack such as that experienced by" plaintiff.  *Id*., 15-1179, p. 17, 197 So. 3d at 378.  The court cited several examples of the university being "unreasonably lax in the enforcement of its written policies," including: numerous non-students coming in and out of the apartment in the days preceding the attack;[17] the roommate's minor cousin staying overnight; the failure of the university to provide the plaintiff with the name, phone number or email address of the assigned CA for her building (although the plaintiff met him by chance when she was moving into the apartment); the unavailability of the CA (the plaintiff sought help from him several times before the incident but he was never available when she went to his apartment).

---

[17] The roommate's visitors that week included the roommate's boyfriend, the boyfriend's aunt, the aunt's two minor children, the roommate's three-year-old child, her minor cousin and the cousin's boyfriend.  Although the roommate was aware that overnight visitors were required to be registered, the roommate never registered her cousin or the boyfriend.

In its defense, the university raised the issue of foreseeability and further argued that "the risk of a sudden attack by [plaintiff's] hand-picked roommate and best friend . . . was not foreseeable or easily associated with SUNO's duty to protect its students from physical attacks of third parties inside their campus housing." *Id*., 15-1179, p. 21, 197 So. 3d 366 at 380. In response, the court of appeal simply relayed the details of the altercation and concluded:

> Ms. Chatman suffered a brutal criminal attack by the precise sort of person—a non-student, non-resident minor—whose SUNO's rules and policies were intended to bar from campus housing without prior authorization. SUNO's policies that guarantee its students 24–hour access to housing staff, who are responsible for enforcing SUNO's safety and visitation rules, were intended to prevent the risk of criminal behavior by such persons. We conclude that the risk of a vicious physical attack on Ms. Chatman by a non-student minor who was not authorized to be present in the apartment is easily associated with SUNO's duty to ensure the safety of its students who live in SUNO's on-campus housing.

*Id*., 15-1179, p. 22, 197 So. 3d at 381. The court made no further comments about the element of foreseeability in the scope-of-the-duty analysis.

In *Adams v. Traina*, 36,306, p. 1 (La. App. 2 Cir. 10/25/02), 830 So. 2d 526, 527, the court of appeal found that a trial court "was clearly wrong" in granting a motion for involuntary dismissal on finding that "the harm [at issue] was not foreseeable to the premises owner in this case under the facts and circumstances presented." The plaintiff had been shot in the parking lot of a nightclub and the evidence adduced showed twenty-five reports to the police of violence in the parking lot in the two years prior to the incident. Twenty-four of those reports involved gunfire, and there were an additional sixty reports of disturbances that did not involve guns. The court also found that the grant of a motion for involuntary dismissal of the town and State was improper as both failed in their licensing and inspecting duties of the club. The court observed that "[t]he foreseeability of harm

21

and ease of association between the town and state's duty to protect the public and what happened in this case is an easy connect." *Id.*, 36,306, p. 14, 830 So. 2d at 533.

These cases illustrate why the scope-of-duty analysis should be evaluated on a case-by-case basis. No two cases are alike and each depends on its particular facts and circumstances.

Mr. Campbell contends that, at the least, there are issues of fact as to the Windsor Court's liability, and an issue as to whether comparative fault principles apply such that summary judgment is inappropriate. We disagree and find that there are no genuine issues of material fact remaining. Having considered the issue of foreseeability and the ease of association between the Windsor Court's duty and the risk of harm suffered by Mr. Campbell,[18] we find that the robbery at issue was not reasonably foreseeable and any duty owed by the Windsor Court did not encompass the risk of harm Mr. Campbell encountered or that Mr. Campbell's own actions would precipitate his injury.

First, the Windsor Court introduced uncontroverted evidence that there has been no crime whatsoever on the premises of the Windsor Court in twenty years (either inside the hotel or in its courtyard).[19] Thus, the primal factor to be considered, as *Posecai* indicated – the existence, frequency and similarity of prior incidents of crime on the premises – supports the lack of foreseeability of the robbery.

Second, a consideration of the other factors (location, nature, and condition of property) do not support a finding that the robbery was foreseeable.[20] No evidence

---

[18] Again, "the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." *Roberts*, 605 So. 2d at 1045, citing *Hill*.

[19] Mr. Campbell's security expert, Thomas Whitlatch, responded to the lack of any criminal activity at the Windsor Court by stating: ". . . every case that I've had, major cases, this has never happened before. That doesn't necessarily mean that it won't happen." Mr. Whitlatch's opinion in this regard does not support a finding of foreseeability.

[20] Mr. Campbell cites Mr. Whitlatch's opinion that, because, at the time, "New Orleans had the highest crime rates in the country, along with the proximity of the hotel to Harrah's casino, combined with other factors, such as the extreme late hour, lack of sufficient lighting, and the free access to the courtyard, altogether rendered this crime foreseeable." Mr. Campbell further argues that there was an absence of security guards present at the time of the robbery, and that security

was introduced to suggest that the hotel is located in an area known for crime. Nor was there evidence that the nature or condition of the property made the robbery foreseeable. We likewise do not find persuasive Mr. Campbell's argument that the lack of sufficient lighting in the courtyard[21] and the lack of security guards "during the entire duration of the incident" (condition of the property factors),[22] made the robbery foreseeable. The *Marmer* court, in rejecting the plaintiff's argument that "a gambling establishment provides a fertile environment for criminal conduct such that same is reasonably foreseeable," astutely noted:

> . . . While the nature of the business conducted or the characteristics of the premises itself, under certain circumstances, may be relevant to the issue of foreseeability, a bare argument based on same, without more, will not suffice to establish a duty to protect patro[n]s from the criminal acts of third parties.

---

"should have been suspicious of the vehicle parking inside the courtyard seconds before Mr. Campbell walked in, and then called him over."

[21] The evidence of insufficient lighting came from Mr. Campbell's own testimony, where he described the lighting as "[v]ery insufficient" but on the day after the incident, the courtyard was "lit up like a football game." In the brief excerpt of his deposition in the record, Mr. Whitlatch indicated his opinion that the incident was a crime of opportunity and among the factors he pointed to was the "lighting that [he] thought was insufficient." In his affidavit, too, he indicates the incident was caused by a number of factors, including "low lighting" in the courtyard. There is no other explanation in the record of his opinion or any indication as to how he arrived at the conclusion that the lighting was insufficient.

[22] According to David Teich, the Windsor Court's general manager, the Windsor Court has two security guards, one who "roves" and another positioned in a control booth. At the time of the incident, the hotel was fully staffed and had two guards, a front desk supervisor in the hotel's lobby, a valet, a night operator and a PBX operator. Given the extremely brief time from the moment the car pulled into the courtyard (at 2:08:12-13 a.m.) and the time that the occupant of the car snatched Mr. Campbell's money (2:10:28-31 a.m.), we do not find the fact that the security guards were not present in the courtyard to be of significance or material. *See*, *e.g.*, *Dye v. Schwegmann Bros. Giant Supermarkets, Inc.*, 627 So. 2d 688, 695 (La. App. 4 Cir. 1993) (where security guard passed through parking lot of grocery store every 15 minutes and one was seen passing by a victim moments before she was murdered, the court found it to be "unlikely that more security guards would have deterred a determined criminal . . . from the robbery and ultimately from the murder."). We know of no duty of a hotel to have a security guard posted at a particular location at a particular time or for a particular duration, and we decline to find such a duty. This is especially the case for a hotel with an (at-least) twenty year absence of crime. Further, we find no duty of a hotel to immediately investigate cars that arrive on its premises.

*Id.*, 00-1598, p. 11, 787 So. 2d at 1121-22. Like *Marmer*, the arguments made here regarding foreseeability are "bare arguments," without evidentiary support and do not establish that the Windsor Court's duty encompassed the risk at issue in this case.

Moreover, even if New Orleans, as a whole, had a very high crime rate at the time of the incident, accepting this as a factor supporting foreseeability would render virtually all crime in the City of New Orleans foreseeable. This is not the intent nor the implication of the foreseeability test set forth by *Posecai* and its progeny. A city's reputation for a high crime rate, absent evidence to the contrary, does not allow the inference that every location is as vulnerable as the next.

While we find that the robbery at issue in this case was not foreseeable for these reasons, perhaps even more important to our decision is the manner in which the robbery occurred. It was not the case that Mr. Campbell was unexpectedly accosted. To the contrary, Mr. Campbell's own actions placed him in grave peril. Even assuming that there was otherwise *some* indication that crime was foreseeable in the courtyard of the Windsor Court, there is no ease of association between the Windsor Court's duty to take reasonable precautions to protect its guests and the risk that a guest would voluntarily approach an unknown vehicle and *twice* display a sizable amount of money to its occupants, who were unfamiliar to the guest. Mr. Whitlatch essentially conceded this fact, as evidenced by the following colloquy in his deposition:

> Q. Is it your opinion that Windsor Court should have reasonably anticipated that Mr. Campbell would approach an unknown vehicle with unknown occupants, would converse with the unknown occupants for over two minutes, would pull out money and put it in reach of the occupants of that vehicle?
>
> A. Using your scenario, no.

We are guided by this Court's recent decision in *Evans*, *supra*, which involved the shooting death of a patron in the parking lot of a convenience store. There was

24

no dispute that the altercation leading to the shooting began when the decedent struck the shooter in the face. Among the allegations of the petition against the convenience store was that the shooting was foreseeable because the parking lot was known to have frequent criminal activity. This Court found that the convenience store owed no duty to the decedent, stating:

> [The decedent] intentionally engaged in non-consensual physical contact against [the shooter] when he struck [the shooter] in the face, committing the crime of battery, and no evidence was submitted in opposition to [the] motion for summary judgment to suggest that such behavior was imminent and/or foreseeable. Therefore, under the particular facts and circumstances of this case, [the convenience store] had no duty to protect [the decedent] against the consequences of his own intentionally criminal actions.

*Id.*, 23-00955, p. 9, 384 So. 3d at 859-60.

The two concurrences in *Evans* analyzed the duty/risk analysis in the following instructive manner. In his concurrence, Chief Justice Weimer stated:

> While Article 2315 creates broad accountability for fault, the "duty" inquiry can narrow the scope of potential liability and financial responsibility. Thus, the threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty. . . .
>
> ***
>
> After examining the policy considerations underlying this court's imposition of the duty in *Posecai*, it is clear that a duty should not be extended to encompass the harm incurred in this case. [The decedent] engaged in intentional criminal conduct which unfortunately led to his death. The question becomes: does the duty to implement reasonable measures to protect patrons from foreseeable criminal acts on business premises encompass the risk of harm to a patron who intentionally instigates and engages in criminal behavior. . . . [T]here is no ease of association between [the convenience store's] duty to use reasonable measures to protect its usual patrons from criminal acts and the risk that a patron will be harmed because he instigated and engaged in violent behavior with a third person while he happened to be on the business's premises.

*Id.*, 23-00955, p. 11, 384 So. 3d at 862-63 (Weimer, C.J, concurring).

Similarly, in his concurrence, Justice Crain stated:

> I agree with the result reached by the majority regarding "duty." I write separately to clarify why I believe Louisiana law recognizes potential liability for the negligent precipitation of a crime of a third party. This certified question requires scrutiny of two elements of a tort claim: 1) duty, a purely legal question based on broad policy considerations; and 2) scope of the duty, a mixed question of law and fact that depends on the circumstances of each case.
>
> ***
>
> There are two relevant considerations at the scope of the duty stage: foreseeability and ease of association. Thus, it is crucial to analyze whether the defendant's alleged actions (or inactions) with regard to security foreseeably resulted in [the decedent's] death and whether that injury is easily associated with the duty to keep a store's premises reasonably safe.
>
> ***
>
> . . . The jurisprudence precludes liability against a business for voluntary criminal actions when there is no specific warning or threat that such criminal behavior will occur. Thus, the foreseeability element is not met.
>
> Further, the facts alleged do not sufficiently establish an ease of association between a business's duty to keep its property safe and the death of an individual as a result of a violent altercation that is unrelated to the business. Thus, I find the scope of the duty element is lacking.

*Id.*, 23-00955, p. 1, 384 So. 3d at 864 (Crain, J., concurring).

We find further support in *Vail v. Masker*, 01-1443 (La. App. 4 Cir. 3/6/02), 812 So. 2d 807, a case that correlates to the instant matter. In *Vail*, the plaintiff was having breakfast at a McDonald's restaurant in New Orleans, when her purse was snatched from her and the thief ran to a waiting car. The plaintiff pursued the thief, who "threw her down," at which time she was run over by the car. Observing that the plaintiff was not injured when her purse was stolen, but when she pursued the thief, the court of appeal held: "[e]ven if the criminal acts of third persons were foreseeable, it was not foreseeable that [plaintiff] would give chase and be injured by the getaway car. Clearly, there is no duty to insure that a patron is not hurt when she is run over by a car when she chases people who robbed her inside a

26

McDonald's." *Id.*, pp. 3-4, 812 So. 2d at 809 (footnote omitted). The court's reasoning applies equally to this case – it was not foreseeable that Mr. Campbell would try to retrieve the money seized from him and place himself "half-way in the car" when the driver sped away.

Moreover, until the car occupants seized Mr. Campbell's money, there was nothing about the situation that would have alerted the Windsor Court that something was amiss. Mr. Campbell even testified that he had no reason to suspect that the car's occupants were going to cause him harm. Nor did he give any indication that he was "in any kind of distress" prior to the women taking his money. And, although Mr. Campbell testified that the Windsor Court never allowed anyone to "loiter," the surveillance video confirms that the car did not loiter. Less than fifteen seconds elapsed from the time the car entered the courtyard and Mr. Campbell approached it.[23] These facts further support our finding that the risk that Mr. Campbell would be robbed was not foreseeable. Nor do we find anything suspicious, as Mr. Campbell alleged in his petition, about the presence of "unfamiliar cars" parked at a hotel (particularly for a very short period), even cars that may have driven past an entranceway and backed up to enter it. This does not give rise to the foreseeability that a crime will occur.

Mr. Campbell also relies heavily on his contention that the Windsor Court holds itself out as a safe and secure place. He maintains that this justified his feeling "safe inside the courtyard" and "essentially created a higher duty . . . to maintain a safe and secure premises." Mr. Campbell cites no authority, and we know of no authority, for this principle. More importantly, whether Windsor Court prides itself as being safe, this does not negate that it was Mr. Campbell's own actions, and not any inaction by the Windsor Court, that gave rise to the incident. Again, it must be

---

[23] The video reflects the following. The car entered the courtyard at 2:08:12-13 a.m. Mr. Campbell entered the courtyard at approximately 2:08:15 a.m. He turned to walk to the car at approximately 2:08:20 and arrived at the car at approximately 2:08:25.

shown that the Windsor Court's duty to take reasonable precautions to protect its guests encompassed the risk that Mr. Campbell would be injured when, after displaying a large sum of money to strangers, he would be robbed and then injured when he tried to retrieve his money. As we have found, the Windsor Court's duty did not so extend.

Our decision should not be interpreted as a modification of the duty/risk analysis. Instead, it clarifies the manner by which the duty/risk analysis was intended to be conducted and ensures that both duty and scope of duty are separately determined. The question of whether a defendant owes a duty, a legal question, is to be addressed first. If a duty is found, then the court is to consider whether, under the facts and circumstances of a case, the scope of the duty encompassed the risk of the harm that occurred.

We note, too, that in a case where the duty and scope of the duty elements are met, this does not end the analysis. A court must also consider the other duty/risk elements: the defendant's breach of the duty, the cause-in-fact element, and proof of damages. In this matter, however, because Mr. Campbell failed to meet an essential element of his claim, the scope of duty element, we need not consider further elements.

**DECREE**

Based upon the foregoing and our review of the record, we find that the defendants are entitled to summary judgment in this case. Although the Windsor Court, as an innkeeper, owed a duty to take reasonable precautions to protect its guests from the criminal acts of third parties, we find that the scope of that duty did not encompass the harm suffered in this case. We therefore vacate the court of appeal's judgment and reinstate the judgment of the trial court.

**COURT OF APPEAL JUDGMENT REVERSED; TRIAL COURT JUDGMENT REINSTATED.**

28

WILLIAM CAMPBELL

VS.

**ORIENT-EXPRESS HOTELS LOUISIANA, INC., WINDSOR COURT HOTEL INC. OF DELAWARE, WINDSOR COURT HOTEL, L.L.C., WINDSOR COURT HOTEL LIMITED PARTNERSHIP, WINDSOR COURT MANAGEMENT LOUISIANA, INC., ABC SECURITY COMPANY, AND XYZ INSURANCE COMPANY**

On Writ of Certiorari to the Court of Appeal,
Fourth Circuit, Parish of Orleans Civil

**CRAIN, J.**, concurring.

I agree the duty and scope of duty elements of a negligence claim are separate, requiring distinct inquiries. *See Evans v. Abubaker, Inc.*, 2023-00955 (La. 5/10/24), 384 So. 3d 853, 863 (Crain, J., concurring), and *Doe v. McKesson*, 2021-0929 (La. 3/25/22), 339 So. 3d 524, 541 (Crain, J., concurring). Duty is a purely legal question that asks whether an entire category of defendants should be excluded from liability based on policy-driven factors. Scope of duty is a mixed question of law and fact that asks whether the duty owed by the defendant will be extended to support liability based on the particular facts of the case, *i.e.*, whether this plaintiff should recover from this defendant for his particular damages that arose in this particular manner. Rather than being policy driven, scope of duty is a matter of common sense, justice, and fairness. *See* Frank L. Maraist and Thomas C. Galligan, Jr., 1 Louisiana Tort Law §5.02[7].

There is generally no duty to protect against the criminal acts of third parties; however, where the relationship between the victim and defendant affords the victim a reasonable expectation of protection or safety, a duty has been imposed. *See Doe*, 339 So. 3d at 545 (Crain, J., concurring); *see also Beck v. Schrum*, 41,647 (La. App. 2 Cir. 11/1/06), 942 So. 2d 669, 672; Restatement (Second) of Torts §315 (1965).

1

Louisiana jurisprudence recognizes such a relationship between an innkeeper or hotelier and guest. *See Kraaz v. La Quinta Motor Inns, Inc.*, 410 So. 2d 1048, 1053 (La. 1982); *see also Banks v. Hyatt Corp.*, 722 F.2d 214 (5th Cir. 1984). Thus, as a matter of law, a hotelier owes its guests a duty to take reasonable precautions to protect them from criminal activity.

Any reference to a hotelier owing a "heightened duty" is a misnomer. A duty either exists or it does not. Historically, Louisiana jurisprudence analogized an innkeeper's duty to that of a common carrier owing "the highest standard of care," or "highest degree of vigilance, care and precaution for the safety of those it undertook to transport," or "the strictest diligence." *See Kraaz*, 410 So. 2d at 1053; *Green v. TACA Intern. Airlines*, 304 So. 2d 357, 359-60 (La. 1974). Those cases pre-dated the refinement of our duty-risk analysis and collapsed the terminology used for each element. The extent or breadth of the duty owed is a matter of the duty's scope. Characterizing the duty in terms of the degree of care owed (*e.g.*, "heightened"; "highest degree"; "strictest diligence"; "ordinary care"; or other similar adjective) blurred the lines between the duty and scope of duty elements. Properly delineated, the scope of duty is what can be broadened or "heightened."

Once a duty is established, the question is whether the duty extends to cover the subject manner of injury—the scope of duty element. The extent of protection owed to a particular plaintiff depends on the particular facts and circumstances and is determined case-by-case to avoid making a defendant the insurer of all persons against all harms. *Todd v. State Through Dept. of Social Services, Office of Community Services*, 96-3090 (La. 9/9/97), 699 So. 2d 35, 39. As we recognized for the breach element in *Farrell v. Circle K Stores, Inc.*, 2022-00849 (La. 3/17/23), 359 So. 3d 467, 478, scope of duty can be resolved on summary judgment if reasonable persons could not disagree that the manner of injury is either within or beyond the scope of duty. Relevant considerations are foreseeability and ease of association. In

2

this case, we must analyze whether the manner of Campbell's injury was 1) foreseeable as a result of the Windsor Court's actions, or inactions, with regard to security, and 2) easily associated with the Windsor Court's duty to keep its premises reasonably safe from criminal activity.

I agree the scope of duty element is lacking. First, the manner of injury was not foreseeable because there was no specific warning or threat such criminal behavior would occur. Second, there is no ease of association between the Windsor Court's duty to protect its guests from criminal activity and the risk Campbell would be injured when he voluntarily approached an idling vehicle and purposefully displayed a sum of cash within reach of the unknown occupants, who then robbed him. Reasonable persons must agree the hotelier's duty to its guests does not extend to the manner of Campbell's injury. *See Farrell*, 410 So. 2d at 478. The Windsor Court is entitled to summary judgment dismissing Campbell's claims. I concur.